Richard M. FIRESTINE, Adm. of the Estate of Lisa Marie Firestine,
Plaintiff,

v.

Simon POVERMAN et al., Defendants.

Peter MIKLAVE, Defendant and Third-Party Plaintiff,

v.

MIDDLESEX MUTUAL ASSURANCE COMPANY, Third-Party Defendant.

Civ. No. 15467.

United States District Court,
D. Connecticut.

Jan. 29, 1975.

sex") as a third-party defendant. Miklave alleges and Middlesex admits that on or about April 20, 1972, Middlesex sold a homeowners policy for a valuable consideration to Frank J. Miklave and Mary E. Miklave, as named insureds, covering a policy period from May 19, 1972, to May 19, 1973, and including general liability coverage up to $50,000 per occurrence for bodily injury liability. Middlesex further admits that Peter Miklave was an additional insured under the homeowners policy because he resided in the same household as the named insureds, who are his parents. Miklave further alleges, but Middlesex denies, that under the terms of the policy Middlesex is obligated to pay on behalf of Peter Miklave all sums which he shall become legally liable to pay as damages because of bodily injury, including death, and is also obligated to defend any suit against Miklave seeking damages on account of such bodily injury or death. Finally, Miklave alleges that he has made demand upon Middlesex for the legal representation in this action to which he claims he is entitled, and that such demand has been rejected by Middlesex. Miklave concludes that if he is legally liable to the plaintiff for the injury and death of Lisa Firestine then Middlesex is in turn liable to indemnify him for the amount of any recovery within the policy limits. Middlesex claims that it is liable neither to defend nor to indemnify Miklave.

James E. Heffernan, Jr., Joseph A. Hourihan, West Hartford, Conn., for plaintiff.

Edmund T. Curran, Maurice T. Fitzmaurice, Edward F. Hennessey, III, Hartford, Conn., for defendants.

## RULING ON THIRD-PARTY DEFENDANT'S PENDING MOTIONS

BLUMENFELD, District Judge.

This is a death action resulting from the drowning of two-year-old Lisa Marie Firestine on July 19, 1972, in a pool maintained on premises in Connecticut under the control of the defendants and available for use of tenants in a housing compound containing some 176 rental units.[1] The defendant Peter Miklave has impleaded the Middlesex Mutual Assurance Company (hereinafter "Middle-

### I.

In order to understand the dispute it is necessary to understand its factual background. Miklave was, at the time of Lisa Firestine's death, a sixteen-year-old summer employee of the Poverman rental-management agency assigned to the maintenance crew. On the morning of July 19, 1972, he and defendant Humphrey were assigned to wash the diving board of and add the chemicals to the pool in which Lisa Firestine

---

1. Diversity jurisdiction is alleged under 28 U.S.C. § 1332 (1970): the decedent's administrator, plaintiff here, is a resident of Wisconsin; all defendants, including Middlesex Mutual Assurance Co., are residents of Connecticut. More than $10,000 is in issue.

drowned later that day. When Miklave and Humphrey left the fenced pool area they admittedly left the gate unlatched. Lisa Firestine apparently wandered through the unlatched gate sometime thereafter, fell into the pool, and drowned.

Middlesex claims that this factual pattern falls into an exclusion to its coverage of the Miklaves: *viz.*, "[t]his policy does not apply . . . to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to nonbusiness pursuits." Middlesex's position is that Miklave's failure to latch the pool gate arose out of his business pursuits. In support of its position Middlesex has entered two motions, which are the subject of this opinion. The first is a motion for summary judgment on both issues—duty to indemnify and duty to defend. The second is a motion for a stay of the main action in this case (Firestine v. Poverman et al.) pending an immediate trial of the issues raised in Miklave's third-party complaint.

 In urging its motions Middlesex stresses its need for a prompt resolution of the issue of its duty to defend. Under Connecticut law, which applies in this diversity action because all events relevant to the case occurred in this state,[2] the duty to defend turns solely upon whether the complaint alleges an occurrence which, if proven, would fall within the coverage of the insureds' policy.[3] *See, e. g.,* Missionaries of the Co. of Mary, Inc. v. Aetna Cas. & Sur. Co., 155 Conn. 104, 110, 230 A.2d 21 (1967). It is irrelevant to the existence of a duty to defend whether or not the complaint is groundless and whether or not the insurer will eventually be able to establish that it has no duty to indemnify the insured. *See, e. g.,* Allstate Ins. Co. v. Lumbermens Mut. Cas. Co., 204 F.Supp. 83 (D.Conn.1962). If the insurer chooses not to defend, and if its insured is found liable, and if a court later finds that the insurer did have a duty to defend, the insurer will be liable to reimburse him for the cost of his defense and to pay the damages for which its insured was found liable, up to the policy limits, *whether or not* it might have had a good defense to the claim that it had a duty to indemnify. *See* Schurgast v. Schumann, 156 Conn. 471, 482–491, 242 A.2d 695 (1968). Thus Middlesex wants an immediate judicial determination of whether it has an obligation to defend Miklave, for if it makes a mistake in not defending him it will be liable for any damages assessed against him whether or not it would be so liable under the terms of the Miklaves' homeowners policy. The instant motions are outgrowths of this desire for prompt resolution of these third-party issues.[4]

2. *See* Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. Middlesex's brief notes that in some states the duty to defend may also arise when the company has knowledge of facts which would place the insured within the coverage of his policy, even though the complaint does not allege an occurrence which would fall within the coverage. *See* Annot., 50 A.L.R.2d 458, 500–504 (1956). This rule, whether or not applicable in Connecticut, *see id.* at 499–500, is not of concern here. Miklave has not tried to make a case under this theory, and the vice president and secretary of Middlesex has filed an affidavit, whose contents are undisputed by Miklave, that, after an investigation of the insurance company's files for information that would indicate coverage notwithstanding the allegations of the complaint, he concluded that there was no coverage because of the business-pursuits exclusion.

When looking to see whether the complaint alleges an occurrence within the coverage of the policy a court must look at all of the policy, including the exclusions. *See* Schurgast v. Schumann, 156 Conn. 471, 489, 242 A.2d 695 (1968).

4. It is worth noting that the predicament Middlesex finds itself in is of its own making. It could have defended Miklave under a reservation of its right to contest its liability, *see* Missionaries of the Co. of Mary, Inc. v. Aetna Cas. & Sur. Co., 155 Conn. 104, 113, 230 A.2d 21 (1967). Or it could have sought a declaratory judgment that it owed Miklave no duty under the policy. *See* 28 U.S.C. § 2201 (1970); American Ins. Co. v. Saulnier, Civ.No. 9046 (D.Conn. June 19, 1962).

## II.

There are three important legal rules and canons of construction that must be borne in mind in ruling on Middlesex's motion for summary judgment. The first is that

"Where an insurer sets up a special exclusion for the purpose of withdrawing from the coverage a specific liability it was unwilling to provide indemnity for, the burden is on the insurer to prove that exception to the risk. O'Brien v. John Hancock Mutual Life Ins. Co., 143 Conn. 25, 29, 119 A.2d 329 (1955). . . ."

American Ins. Co. v. Saulnier, 242 F. Supp. 257, 259 (D.Conn.1965).

The second rule is that language in an insurance contract is to be given its ordinary and natural reading. *See* Gaunt v. John Hancock Mut. Life Ins. Co., 160 F.2d 599, 601 (2d Cir.), cert. denied, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947); Passkowski v. Prudential Ins. Co. of America, 182 F. Supp. 819, 821–822 (D.Conn.1960); General Constr. Co. v. Aetna Cas. & Sur. Co., 151 Conn. 684, 686, 202 A.2d 146 (1964); Plunkett v. Nationwide Mut. Ins. Co., 150 Conn. 203, 206–207, 187 A. 2d 754 (1963), and cases cited therein. Where the language is ambiguous and the ordinary meaning is unclear the words will be construed so as to favor the insured because it was the insurer who wrote the language. This is commonly known as the canon *"contra proferentem." See* Lee v. Aetna Cas. & Sur. Co., 178 F.2d 750, 753 (2d Cir. 1949) (Hand, C. J.); New York Cent. Mut. Fire Ins. Co. v. Basch, Civ. No. 10,542 (D.Conn. Oct. 19, 1966); A.M. Larson Co. v. Lawlor Ins. Agency, Inc., 153 Conn. 618, 622, 220 A.2d 32 (1966); Smedley Co. v. Employers Mut. Liab. Ins. Co., 143 Conn. 510, 513, 123 A.2d 755 (1956) (canon extends to interpreta-

tion of exclusion clauses); Carta v. Providence Wash. Indem. Co., 143 Conn. 372, 377, 122 A.2d 734 (1956).

The third rule is that the insurance policy must be construed as a whole, and all of its relevant provisions are to be considered in connection with one another. *See* General Constr. Co. v. Aetna Cas. & Sur. Co., 151 Conn. 684, 685, 202 A.2d 146 (1964); Leathermode Sportswear Co. v. Liberty Mut. Ins. Co., 150 Conn. 63, 66, 186 A.2d 79 (1959).

With these principles to guide the inquiry, the exclusionary clause in the Miklaves' policy must be construed in order to determine whether the actions upon which Peter Miklave's possible liability is based were "business pursuits of any Insured except activities therein which are ordinarily incident to nonbusiness pursuits." The initial inquiry is the meaning of "business pursuits."[5]

Some aid to the ascertainment of the meaning of that phrase may be found within the four corners of the policy itself. The Miklaves' insurance policy contains two other exclusions that stand on either side of exclusion "d.," the business-pursuits exclusion, and give it context:

"This policy does not apply: . . .

c. to bodily injury or property damage arising out of the rendering of or failing to render *professional services*;

d. to bodily injury or property damage arising out of *business pursuits* of any Insured except activities therein which are ordinarily incident to nonbusiness pursuits;

e. to bodily injury or property damages arising out of any premises, other than an insured premises, owned, rented or controlled by any Insured; but this exclusion does not apply to bodily injury to any residence em-

---

5. Because Connecticut law governs, the task is to determine what construction would be given "business pursuits" by the Connecticut courts. I have been directed to and have found no Connecticut cases on point, however, so in this case the determination must be made *ab initio*.

ployee arising out of and *in the course of his employment* by any Insured . . . ." (Emphasis added.)

In addition, the rendering of professional services and work in the course of one's employment are referred to explicitly in numerous other places in the insurance policy. The most logical interpretation of "business pursuits" as used in this contract is therefore one that distinguishes them from these two other for-gain activities. The policy makes clear that when the insurer meant "in the course of employment" it was capable of and willing to say so; when it instead said "business pursuits" it must be assumed that something different was meant. Not only in the commercial world, but in our industrial society as a whole, there is a real distinction between one who pursues a business for profit and a sixteen-year-old whose "course of employment" is holding down a summertime job on a maintenance crew. In this case Peter Miklave was admittedly acting as the employee of defendant Poverman when he left the gate to the pool area unlatched. This act was within the course of his employment and therefore was not an act arising out of a "business pursuit." Since no other evidence bearing upon this issue has been submitted, I hold that the business-pursuits exclusion does not apply.[6] Nor has any other exclusion of the policy been brought to the attention of the court. Thus the complaint against Miklave alleged acts within the coverage of his insurance policy, invoking his insurer's duty under Connecticut law to defend him.[7] Middlesex's motion for summary

judgment that no duty to defend or indemnify is owed must be denied.

### III.

Because Middlesex's motion for summary judgment has been denied it becomes necessary to consider its motion for a stay of proceedings and immediate trial on the issues raised by the third-party complaint. Miklave has not objected to this motion, but the plaintiff Firestine has.

The third-party defendant has adduced no authority in support of its position, although what it asks is clearly within the court's power to give incident to its discretion to manage the trial of cases. *See* Landis v. North Am. Co., 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936); Fed.R.Civ.P. 42(b). *See generally* Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Nor has Middlesex put forth any reasons for a stay other than to relieve its predicament. As noted in note 4, *supra*, however, Middlesex has brought this predicament upon itself.

Firestine, on the other hand, has addressed a strong argument to the court's discretion to deny this motion. *See* Western Contracting Corp. v. National Sur. Co., 163 F.2d 456, 458 (4th Cir. 1947); Chappell & Co. v. Santangelo, 30 F.Supp. 599 (D.Conn.1939). This suit was filed over two years ago. The plaintiff represents that since his daughter's fatal accident he has been transferred out of Connecticut and has begun to lose contact with his potential witnesses in this case. More delay

6. In support of its opposing view Middlesex cites only Annot., 48 A.L.R.3d 1096 (1973). This source does state that the business-pursuits exclusion covers acts within the course of one's employment. However, the Annotation relies only upon a fairly small number of Missouri and Louisiana cases as support for its conclusion, and I do not feel that such a sample makes compellingly persuasive authority. Furthermore, the Annotation does not indicate whether the policies under consideration in the cases it relies upon

contained language like that in this case differentiating business pursuits from the course of one's employment.

7. Whether or not Middlesex has an obligation to indemnify need not be decided until it is determined whether Miklave is liable for any damages. By postponing this decision the court gives Middlesex the opportunity to interpose any additional contractual defenses it may have; to date it has relied solely upon the business-pursuits exclusion.

would only aggravate his problem. The court will not prejudice the plaintiff's case in order to extricate Middlesex from its self-imposed dilemma. The motion for a stay of proceedings and an immediate trial of the third-party complaint is denied. It is

So ordered.