Jacqueline JURRIUS

v.

**MACCABEES MUTUAL LIFE INSURANCE COMPANY.**

**Civ. No. H–82–775.**

United States District Court, D. Connecticut.

May 18, 1984.

Peter Upton, Tarlow, Levy, Mandell & Kostin, West Hartford, Conn., for plaintiff.

Jeffrey L. Williams, Hartford, Conn. (James Geanuracos, Hartford, Conn., on brief), Skelley, Clifford, Vinkels, William & Rottner, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CLARIE, Senior District Judge.

The defendant Maccabees Mutual Life Insurance Company, ("Maccabees"), has moved, pursuant to Rule 56, Fed.R.Civ.P., to grant summary judgment in its favor against Jacqueline Jurrius ("the plaintiff"). Maccabees, which insured the life of the plaintiff's husband, Robert Jurrius ("the decedent" or "Jurrius") under a group term policy, contends that the uncontroverted facts surrounding Jurrius' death fell within a contractual exclusion to accidental death and dismemberment coverage under said policy. The Court finds, as a matter of law, that the exclusion clause at issue is both clear and unambiguous, and that Jurrius' actions at the time of his death fall within its scope. Thus, the Court grants Maccabees' motion for summary judgment, and dismisses the plaintiff's complaint against Maccabees.

### Facts

The following facts are undisputed. They have been adduced from the pleadings and from the plaintiff's responses to the defendant's requests for admissions. Moreover, they have been stipulated to by both parties, in open court, to be the agreed factual basis for the Court's consideration of this motion.[1]

On February 11, 1982, at approximately 6:35 a.m., Jurrius, a vice president of United Maintenance and Engineering Company ("UME") arrived at Bradley International Airport, Windsor Locks, Connecticut. Jurrius intended to pilot a small private airplane on a business trip from Hartford to Detroit, Michigan, accompanied by one Richard H. Rush. The plaintiff admitted that "said planned flight was not a regularly scheduled flight on a commercial aircraft." (Plaintiff's Answers to Defendant's Request for Admission, 11/13/83, No. 11). Upon arriving at Bradley International, Jurrius obtained weather information and then loaded both his luggage and that of Rush onto the airplane. The decedent then began a special "cold weather start" of his airplane, necessary to start his plane during the winter months. After visually inspecting the plane's exterior, Jurrius manually turned the aircraft's propeller to circulate oil to the cylinders of the plane's engine. The decedent then boarded the aircraft and started the engine. Jurrius next turned off the engine and left the cockpit, but did not turn off the aircraft's magnetos. Upon deplaning, Jurrius returned to the front of the aircraft, and manually turned the propeller a second time. Tragically, the engine started. "[W]hen the aircraft's engine started while plaintiff's decedent, Robert W. Jurrius, manually turned the propeller a second time, the propeller struck and killed plaintiff's decedent." (Plaintiff's Supplemental Answers to Defendants' Request for Admissions, 2/10/84, No. 22). The plaintiff's counsel, during argument, referred to evidence which would allow for the inference that Jurrius may have slipped on an icy patch while he was struck and killed. The Court accepts this inference as true for the purpose of this ruling. *United States v.*

---

**1.** The attorney for the defendant stated during oral argument, that "the facts in this matter are undisputed by virtue of the pleadings and requests for admission as filed," and that "the plaintiff has filed no counter-affidavits or counter-documents attempting to report an ambiguity in the policy in order to avoid this motion." Counsel for the plaintiff agreed, commenting, that "the facts are indisputable," with the exception of whether or not Jurrius slipped on a patch of ice, a contention which plaintiff's counsel could not say, at the time, was of "any materiality or bearing," but which the Court now accepts as true for the purposes of this ruling. *Infra.* Plaintiff's counsel later added that the issue was whether the policy language at issue "clearly excludes coverage *for the facts that we have proffered to your Honor, as agreed upon at this stage.*" (emphasis added).

*Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

Subsequently, the plaintiff, as named beneficiary under her husband's group life policy, filed a claim for both the life benefits and also the accidental death and disability benefits. Maccabees paid the amount due under the life insurance coverage, but denied the claim for the accidental death and disability benefits. In so doing, Maccabees relied upon the language of an exclusion relating to private aircraft. This exclusion, Limitation Subsection (f) of the accidental death and dismemberment policy, states, in pertinent part:

> "LIMITATIONS. Payment under this Provision will not be made for loss resulting directly or indirectly, wholly or partially from any of the following:
>
>     *     *     *     *     *     *
>
> (f) travel or flight in or on any aeronautical device or conveyance or participating in any operation thereof, except as a passenger on a commercial aircraft making a regularly scheduled flight."

The plaintiff instituted this suit in order to collect the benefits which she claims are due under the accidental death and dismemberment provisions.

### Discussion of Law

In a motion for summary judgment, the moving party bears the burden of proving that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In its consideration of whether the moving party has satisfied this burden, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Diebold, supra.* At one time, the Second Circuit was loathe to approve summary judgment in any but "the most extraordinary circumstances." *Heyman v. Commerce & Industry Insurance Company,* 524 F.2d 1317, 1319 (2d Cir.1975). More recently, however, the Second Circuit's decisions have reflected the spirit of

Rule 56, which intends summary judgment to be used as a tool by which the Court can decide whether or not the "curtain [of a trial] should rise." *Id., citing Fitzgerald v. Westland Marine Corporation,* 369 F.2d 499, 500 (2d Cir.1966). The current standard by which summary judgment should be considered has been articulated by the *Heyman* court in this fashion: "the court cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman, supra,* at 1319–20. Considering the undisputed facts of this case, and the clear language of the exclusion at issue, the Court finds that there are no issues of material fact to be tried here.

■ Under Connecticut law, when, as here, the plaintiff has neither alleged fraud nor misrepresentation, "it is the function of the court to construe the provisions of the contract of insurance." *Gottesman v. Aetna Insurance Company,* 177 Conn. 631, 634, 418 A.2d 944 (1979). In so doing, the Court should interpret the policy "according to the general rules of contract construction." *Cunninghame v. Equitable Life Assurance Society of the United States,* 652 F.2d 306, 308 (2d Cir.1981) (construing Connecticut law). These rules indicate that: (1) where "the terms of the policy are clear and unambiguous, then the language must be given its natural and ordinary meaning," *id.;* in other words, the Court may not " 'indulge in a forced construction ignoring provisions [of the policy];' " *Horak v. Middlesex Mutual Assurance Company,* 181 Conn. 614, 617, 436 A.2d 783, *quoting Weingarten v. Allstate Insurance Company,* 169 Conn. 502, 509–10, 363 A.2d 1055 (1975); (2) where, however, the "language is ambiguous and the ordinary meaning is unclear," the policy language will be construed against the insurer; and (3) insurance policies must be construed as a whole, taking all of their relevant provisions together. *Firestine v. Poverman,* 388 F.Supp. 948, 951 (D.Conn. 1975). Furthermore, the intent of the parties is to be gleaned from the four corners of the policy. *Leathermode Sportswear, Inc. v. Liberty Mutual Insurance Compa-*

*ny,* 150 Conn. 63, 66, 186 A.2d 79 (1962), and not from "an extraneous intent the court may believe was in the minds of the parties." *Lyon v. Aetna Casualty & Surety Co.,* 140 Conn. 304, 311, 99 A.2d 141 (1953). Only if the Court makes a preliminary finding that the policy language at issue, taken either on its face or in the context of the entire policy, is ambiguous, should the Court consider the reasonable expectations of the insured, *Progressive Casualty Insurance Co. v. Marnel,* 587 F.Supp. 622 (D.Conn.1984), and then only if such expectations are "objectively reasonable from a layman's point of view." *Cody v. Remington Electric Shavers,* 179 Conn. 494, 497, 429 A.2d 810 (1980).[2] If the Court finds that the particular language, including a specific exclusion from coverage is ambiguous, or, in other words, is " 'susceptible of at least two fairly reasonable interpretations,' " this finding would present a " 'triable issue of fact,' " rendering summary judgment improper. *Heyman, supra,* at 1320, *quoting Aetna Casualty & Surety Company v. Giesow,* 412 F.2d 468, 471 (2d Cir.1969). However, if no material facts are in dispute, and if the Court finds a policy exclusion to be clear and unambiguous, the question of whether actions of an insured fit within that exclusion remains a question of law which may be decided by the Court in ruling upon a motion for summary judgment. *Rauch v. Underwriters at Lloyd's of London,* 320 F.2d 525, 531 (9th Cir.1963), *rehearing den'd* (1963). *See also Floramo v. Monumental Life Insurance Co. of Baltimore,* 447 F.Supp. 354, 355 (N.D.Ill.1978) (*dicta*) and *American Casualty Company of Reading, Pa. v. Mitchell,* 393 F.2d 452, 455 (8th Cir.1968) (Blackmun, J.). Two issues thus present themselves to the Court on this motion. The threshold issue is whether the language of Limitation, Subsection (f), taken either textually, on its face, or contextually, in the context of the entire policy, is clear or ambiguous. If the Court finds the language clear and unambiguous, it must then decide, as a matter of law, whether Jurrius' actions on the day of his untimely death abnegate coverage under Limitation Subsection (f).[3]

### 1. The Language of the Exclusion is Clear and Unambiguous

█ Several Connecticut canons of construction address the issue of whether or not an insurance provision, read in the context of all other relevant provisions, is ambiguous. The primary rule is that the Court must read the policy language as a layman, rather than an experienced underwriter, would. *Cody, supra.* In addition, the Court should not "torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity;" rather, the Court should bear in mind that "words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Marcolini v. Allstate Insurance Co.,* 160 Conn. 280, 284, 278 A.2d 796 (1971).

█ The plaintiff argues for a textual ambiguity. She claims that the specific text of Limitation Subsection (f) is susceptible of two interpretations, either (1) that "there is no coverage for loss occurring as a result of travel or flight in an aeronautical device, or as a result of participation in

---

**2.** The plaintiff's memorandum in opposition to summary judgment states, in conclusory fashion, that "summary judgment is not appropriate where the insured's state of mind is an issue." While this statement of law is generally true, the plaintiff marshals neither law nor facts which would even suggest why the Court should accept the necessary premise to this conclusion, to wit, that Jurrius' subjective state of mind should be a material issue in this case. In light of the citations from *Progressive Casualty, supra,* and *Cody, supra,* the Court declines to consider this issue any further.

**3.** Plaintiff's counsel agreed both with this statement of the issues and with the Court's ability to grant summary judgment on the facts stipulated to during oral argument. At that time, he stated, "I think the language—I believe that if your Honor looked at it and you felt that it is absolutely concise and clearly excludes coverage for the facts that we have proffered to your Honor, as agreed upon at this stage, then it would be within the purview of the Court to be able to grant summary judgment in favor of the defendant."

the operation of an aeronautical device *while* it is engaged in travel or flight," (emphasis in original) or (2) that the language excludes "coverage for loss occurring as a result of travel or flight in an aeronautical device or as a result of participation in the operation of an aeronautical device, *regardless* of whether or not it is engaged in travel or flight." (emphasis in original). (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment, at 5). The Court discovers no such ambiguity, but rather finds that the latter construction is the only reasonable one.

Limitation Subsection (f) is broken down into two major parts. With the exception of commercial passengers on regularly scheduled flights, this limitation disallows coverage for "travel or flight in or on any aeronautical device of conveyance" or "for participation in any operation thereof." These two major parts are joined by the disjunctive conjunction, "or." Connecticut law states that the "use of the disjunctive conjunction 'or' unambiguously requires that either of the exclusions separated by the conjunction, if applicable, excludes coverage." *Horak v. Middlesex Mutual Assurance Co., supra,* 181 Conn. at 616–17, 436 A.2d 783. As a result, if an insured not making a regularly scheduled flight on a commercial aircraft suffers loss as a result of *either* "travel or flight in or on any aeronautical device of conveyance" *or* by "participating in any operation thereof," the defendant does not have to provide coverage.

The plaintiff maintains, however, that the word "thereof" in the latter phrase excluding coverage refers back to the entire former phrase and precludes coverage only when the participation "in any operation" occurs during "travel or flight." This argument is a strained importation of ambiguity where none exists.

The only normal and reasonable syntactic relationship between "thereof" and the former phrase would be that "thereof" refers back to the last preceding noun cluster of the former phrase, which is "aeronautical device of conveyance." However confus-

ing insurance contracts may be in general, the Court will not assume that a reasonable reader could interpret the "thereof" as leapfrogging "aeronautic device or conveyance" so as to modify "travel or flight." Moreover, strictly speaking, while one can certainly operate an "aeronautical device or conveyance," one cannot operate "travel or flight." The "thereof" can only reasonably modify "aeronautical device or conveyance." Thus, the Court finds that the latter phrase of exclusion clearly and unambiguously precludes accidental death and dismemberment coverage when an insured participates in any operation of an aeronautical device or conveyance, except as a commercial airline passenger on a regularly scheduled flight. Considering the policy as a whole, the Court finds no relevant provisions which would militate for a contrary conclusion.

2. *The Facts Surrounding Jurrius' Death Fit Within Limitation Subsection (f)*

When, as here, an insurer sets up a special exclusion so as to withdraw from coverage "a specific liability it was unwilling to provide indemnity for, the burden is on the insurer to prove that exception to the insurance contract." *Firestine, supra,* quoting *American Insurance Co. v. Saulnier,* 242 F.Supp. 257, 259 (D.Conn.1965). Under the uncontroverted facts of this case, Maccabees has satisfied its burden of proving that the acts surrounding the death of Jurrius fall within Limitation Subsection (f).

On the day of this death, Jurrius was to pilot a small private plane to Detroit, Michigan. The plaintiff has admitted that this was not a regularly scheduled commercial flight. *Supra,* at 1303. As pilot, he performed the following acts, all of which evidence his participating in the operation of this plane. He obtained weather information from airport officials, visually inspected the aircraft's exterior, and then began a "cold weather start" of the airplane, so that it would run smoothly despite the cold weather. To commence this "cold weather start," Jurrius manually

spun the propeller. This action circulated oil into the cylinders of the airplane's engine. Jurrius then stepped into the cockpit, and electronically started the ignition. Thereafter, he deplaned and then, once again, manually spun the propeller. When the airplane's engine started, Jurrius was instantly killed. Whether or not Jurrius slipped on a patch of ice during the period in which he was struck and killed is not a material fact. Immediately before his death, Jurrius had performed acts necessary and preliminary to the operation of an aeronautical device, the small private airplane. More importantly, the plaintiff has admitted that it was the propeller which "struck and killed" Jurrius "while he manually turned the propeller the second time." Supra, at 1304. Thus, at the very moment of his death, Jurrius, as pilot, was turning the plane's propellor, so as to perform a "cold weather start" of the same plane, and was, most assuredly, participating in an essential aspect of this plane's operation. *Blonski v. Banker's Life Co.*, 209 Wis. 5, 7–8, 243 N.W. 410 (1932). As such, his acts fit easily within the scope of the latter phrase of Limitation Subsection (f), as construed *supra*, at 1306. Thus, the Court grants the defendant's motion for summary judgment and dismisses the plaintiff's case against it.

SO ORDERED.