**STAMFORD WALLPAPER COMPANY, INC., Plaintiff–Appellant–Cross–Appellee,**

v.

**TIG INSURANCE, formerly known as Transamerica Insurance Company, Defendant–Appellee–Cross–Appellant.**

**Nos. 1272, 1789, Dockets 96–9218, 96–9242.**

United States Court of Appeals, Second Circuit.

Argued April 24, 1997.

Decided Feb. 25, 1998.

---

Leo Gold, Stamford, CT (Isadore M. Mackler, Mackler & Gold, on the brief), for Plaintiff–Appellant–Cross–Appellee.

Joel M. Fain, Hartford, CT (Michael F. Aylward, Ann Grunbeck Monaghan, Morrison, Mahoney & Miller, on the brief), for Defendant–Appellee–Cross–Appellant.

Before: OAKES and JACOBS, Circuit Judges, and STEIN, District Judge.[*]

JACOBS, Circuit Judge:

TIG Insurance ("TIG") has denied coverage on three liability claims submitted by its policyholder, plaintiff Stamford Wallpaper Company, Inc.("Stamford"). The underlying liability claims arise out of: a third-party complaint seeking contribution from Stamford under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") in a cost-recovery action for the clean-up of a landfill; and two letters from the Environmental Protection Agency ("EPA") informing Stamford that it is a potentially responsible party ("PRP") in connection with the disposal of hazardous waste at two other disposal sites (collectively, the "CERCLA claims"). Stamford brought this diversity action in the United States District Court for the District of Connecticut (Covello, *J.*), alleging that TIG has breached the comprehensive general liability insurance contract by disclaiming coverage and by refusing to defend.

In district court, Stamford moved for partial summary judgment limited to TIG's duty to defend. The district court denied that motion—and dismissed Stamford's breach of contract claim—on the ground that although the CERCLA claims against Stamford qualified under the insurance contract as "suits" seeking "damages," the pollution exclusion clause defeated coverage and relieved TIG of any duty to defend. The parties stipulated to the dismissal of the remainder of Stamford's claims, and the district court ordered the dismissal.

Stamford appeals the district court's decision with respect to the applicability of the pollution exclusion clause. TIG cross-appeals, arguing that the district court's decision should be affirmed regardless of any exclusion, because, under the policy term affording specified liability and defense coverage for suits seeking damages against the insured, a third party's demand that a policyholder clean up someone else's property does not seek "damages," and a PRP letter is not a "suit."

Each of these three questions is potentially dispositive: Stamford must prevail on all of them to trigger TIG's duty to defend all of the claims. In order to determine whether a claim letter is a "suit," or whether a third party's environmental cleanup demands can constitute "damages," we would be required to predict how the Connecticut Supreme Court would rule, or to certify the questions to that court. However, because this case can be decided on the basis of Connecticut law bearing on the scope of the pollution exclusion, we need not reach the other two issues. We assume, without deciding, that the underlying claims constitute "suits" seeking "damages." We nevertheless affirm the denial of summary judgment and the dismissal of Stamford's breach of contract claim on the ground that the pollution exclusion clause defeats any duty to defend. TIG's cross-appeal is dismissed as moot.

## BACKGROUND

This Court has jurisdiction under 28 U.S.C. § 1291. On an appeal of the dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6), we assume the truth of the allegations in the complaint, *Romney v. Lin,* 94 F.3d 74, 77 (2d Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997), which we summarize here. Stamford is a Connecticut corporation with offices in Stamford, Connecticut. From 1970 until 1983, the company used liquid mineral spirits, which generate waste solvents, in its wallpaper manufacturing process. Beginning in 1974, Stamford contracted for the removal of the waste solvents with Drum

---

[*] The Honorable Sidney H. Stein of the United States District Court for the Southern District of New York, sitting by designation.

Automation, Inc., Chemical Waste Removal Service, Inc., and Solvents Recovery Service of New England (collectively, the "carters"). The carters recycled these waste materials and sold them, back to Stamford as well as to third parties.

Each of the three carters retained by Stamford has been alleged to be a source of hazardous waste at one or more of three sites designated by the EPA as hazardous landfills: the Davis Landfill in Smithfield, Rhode Island; Gallups Quarry in Plainfield, Connecticut; and Solvents Recovery Service of New England in Southington, Connecticut. Stamford asserts that none of the residual by-products of its waste were commingled with other waste materials or deposited at any of these three sites.

Nonetheless, Stamford may be liable for cleanup costs at one or more of these sites. On June 12, 1992, the EPA sent Stamford a PRP letter notifying the company of its potential liability under CERCLA for response action costs of $3,350,000 at Solvents Recovery Service in Southington, Connecticut. Stamford was named as a third-party defendant in *United States v. Davis*, Civ. No. 90–0484–P (D.R.I. filed Feb. 22, 1993), a CERCLA cost-recovery action arising from the clean-up of the Davis Landfill in Rhode Island, on February 22, 1993. Finally, on April 1, 1993, the EPA issued another PRP letter, notifying Stamford of its potential liability for response action costs of $257,441 in connection with the cleanup of Gallups Quarry in Plainfield, Connecticut.

Stamford purchased Comprehensive General Liability ("CGL") insurance from TIG, a New York corporation headquartered in Texas. The coverage terms of the CGL policy (the "policy") did not vary from 1974 to 1983, the relevant time period in this action. Under the policy, TIG has the "right and duty to defend any suit against the insured seeking damages on account of ... bodily injury or property damage [to which this insurance applies], even if any of the allegations of the suit are groundless, false or fraudulent."

The policy also contains a standard "pollution exclusion" clause. This clause excludes from coverage any liability for

bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

TIG thus has no duty to indemnify or defend Stamford against claims arising from the discharge of pollutants, unless the discharge is within the "sudden and accidental" exception. This clause is familiar language in CGL contracts of this vintage, and the language of this clause has been the subject of much litigation, both in Connecticut and elsewhere.

On June 16, 1993, Stamford notified TIG of the claims that had been filed against Stamford in the *Davis* action. By letter dated December 14, 1993, TIG invoked the policy's pollution exclusion clause, and disclaimed any duty to defend or indemnify Stamford with respect to claims arising from any of the three sites. Stamford sued TIG in Connecticut state court on December 8, 1994, seeking damages for breach of contract. Four weeks later, TIG removed the case to the United States District Court for the District of Connecticut on the basis of 28 U.S.C. §§ 1332 and 1441. Stamford moved for partial summary judgment on the limited question of TIG's duty to defend it against the environmental claims.

The district court held, *inter alia*, that all of the allegations made against Stamford with respect to each of the three sites fell within the scope of the policy's pollution exclusion; that none of the allegations brought the claims within the "sudden and accidental" exception; that therefore none of the CERCLA claims were for bodily injury or property damage covered by the policy; and that absent coverage, TIG had no duty to defend Stamford against those allegations. Plaintiff's motion for partial summary judgment was denied and its breach of contract claim was dismissed.

## DISCUSSION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and applied the substantive law of the state of Connecticut to this diversity action. *See GNOC, Corp. v. Endico,* 876 F.2d 1076, 1078 (2d Cir.1989) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938)). (Specifically, we apply state law to determine the applicability of an insurance policy to an action brought under CERCLA. *New York v. Blank,* 27 F.3d 783, 788 (2d Cir.1994).) A district court's summary dismissal of a claim is reviewed *de novo. McCarthy v. Olin Corp.,* 119 F.3d 148, 152 (2d Cir.1997).

Under Connecticut law, an insurer's duty to defend is broader than its duty to indemnify. "The general rule is [that] if an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured." *West Haven v. Commercial Union Ins. Co.,* 894 F.2d 540, 544 (2d Cir.1990) (citations and internal quotation marks omitted) (applying Connecticut law). "Where a complaint in an action . . . states a cause of action against the insured which appears to bring the claimed injury within the policy coverage, it is the contractual duty of the insurer to defend the insured in that action . . . regardless of the duty of the insurer to indemnify." *Keithan v. Massachusetts Bonding and Ins. Co.,* 159 Conn. 128, 267 A.2d 660, 665–66 (1970). The existence of a duty to defend is determined on the basis of what is found within the four corners of the complaint; it is "not affected by facts disclosed by independent investigation, including those that undermine or contradict the injured party's claim." *Cole v. East Hartford Estates Ltd. Partnership,* No. CV 950547179S, 1996 WL 292135, at *2 (Conn.Super. May 15, 1996). Although the duty to defend is broad, however, it is circumscribed by the language of the insurance contract. "The nature of the insurer's duty to defend is purely contractual. There is no common law duty as to which the courts are free to devise rules." *Linemaster Switch Corp. v. Aetna Life and Cas. Corp.,* No. CV 910396432S, 1995 WL 462270, at *5 (Conn.Super. July 25, 1995) (citations and internal quotation marks omitted).

The coverage grant of the TIG contract extends to "any suit seeking damages on account of . . . property damage." However, the pollution exclusion carves out suits arising from the "discharge, dispersal, release or escape" of "pollutants into or upon land, the atmosphere or any water course or body of water," except where "such discharge, dispersal, release or escape is sudden and accidental." The question is whether any of the three claims against Stamford includes an allegation that falls "even possibly" within the scope of the policy, as drawn by the pollution exclusion and the "sudden and accidental" exception to that exclusion. We agree with the district court that none of the three claims contains such an allegation.

The insurer bears the burden of proving the applicability of a contract term, such as the pollution exclusion, which withdraws from coverage a specific type of liability. *Firestine v. Poverman,* 388 F.Supp. 948, 951 (D.Conn.1975) (applying Connecticut law). Here, TIG has demonstrated that all three CERCLA claims seek to impose upon Stamford liability for environmental loss that was caused by the discharge of "waste materials . . . into or upon land." The Gallups Quarry PRP letter informs Stamford that the

> EPA has reason to believe that you arranged by contract, agreement or otherwise for disposal or treatment, or arranged with a transporter for transport for disposal or treatment of hazardous substances found at the site. By this letter, EPA notifies you of your potential liability with regard to this matter. . . .

The language of the Solvents Recovery Service PRP letter is identical in all material respects. Similarly, the third-party complaint in *Davis* alleges that Stamford arranged with carters for "the treatment or disposal of hazardous substances as defined under CERCLA," and that "hazardous substances generated by [Stamford] were disposed of at the [s]ite." Neither the PRP letters nor the third-party complaint allege or contemplate that Stamford's CERCLA liability arises from any activity other than the deposit of waste materials turned over to the

carters by Stamford in the ordinary course of business.

Stamford contends that these allegations fall outside the scope of the pollution exclusion. It argues that the acts of "disposal and treatment" alleged by the EPA are not equivalent to "discharge, dispersal, release or escape," as described by the pollution exclusion. Alternatively, Stamford asserts that even if the clause is construed to include "disposal and treatment," it does not apply to the act of *arranging* for the transport, treatment or disposal of waste materials.

Both of these arguments are unpersuasive for the same reason: the language of the exclusion focuses on the nature of the property damage, not on the nature of the insured's conduct or activities. The policy excludes coverage for damages arising from the discharge of waste materials; it does not specify the manner in which such discharge is carried out, or that it be executed by Stamford directly as opposed to its carters or anyone else. The underlying CERCLA claims allege that Stamford generated waste which resulted in the release of the hazardous materials found at the landfills. Because Stamford's potential liability arises from the discharge of waste materials into or upon the land, the claims come within the pollution exclusion.

■ To be sure, where the language of a policy is ambiguous, it must be construed in favor of coverage. *See Heyman Assocs. No. 1 v. Insurance Co. of Pennsylvania*, 231 Conn. 756, 653 A.2d 122, 130 (1995). But this rule does not require or permit us to "indulge in a forced construction[,] ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." *Id.* (citations and internal quotation marks omitted); *see also Bell Power Sys., Inc. v. Hartford Fire Ins. Co.*, No. CV 0065538, 1995 WL 81430, at *3 (Conn.Super.Ct. Feb. 15, 1995) (holding that pro-coverage rule does not come into play when policy's meaning is plain); *EDO Corp. v. Newark Ins. Co.*, 878 F.Supp. 366, 372 (D.Conn.1995) (same). We conclude that TIG clearly intended to exclude from coverage damages arising from the discharge of pollutants onto land, regardless of the nature

of the discharge and regardless of whether the actual polluter was Stamford or a third party, so long as the discharge was not "sudden and accidental."

■ Stamford maintains that even if the EPA's allegations are within the scope of the pollution exclusion, the "sudden and accidental" exception to the exclusion obligates TIG to provide a defense. The Supreme Court of Connecticut has not yet addressed the question of whether the insurer or the insured bears the burden of proving the applicability, or lack thereof, of an exception to an exclusion. We need neither answer nor certify this question, because even assuming *arguendo* that the burden is on the insurer, TIG has shouldered it in this case.

In order for the "sudden and accidental" exception to apply, the allegations within the four corners of the complaint must raise the possibility that the event which caused the pollution-related property damage was sudden and accidental. *See EDO Corp. v. Newark Ins. Co.*, 898 F.Supp. 952, 961–62 (D.Conn.1995) (applying Connecticut law). The allegations in the PRP letters and in the third-party complaint support no such inference. Each CERCLA claim references Stamford's disposal of waste through the carters, who deposited portions of this waste in the various landfills. There is nothing accidental about such an arrangement, which is characteristic of an ordinary course of business. And there is nothing to suggest that the deposit of waste at the dump sites was sudden. Under Connecticut law, " 'sudden' is basically a temporal concept.' " *Carrier Corp. v. The Home Ins. Co.*, No. CV–88–352383–S, 1994 WL 547736, at *1 (Conn.Super.Ct. Sept. 21, 1994). The District of Connecticut has noted that "[c]ase law instructs that releases of pollutants, occurring not as the result of a sudden event but . . . as a matter of course in the daily operation of [a] plant" are not "sudden" within the meaning of the "sudden and accidental" exception. *EDO Corp. v. Newark Ins. Co.*, 878 F.Supp. 366, 376 (D.Conn.1995). Here, there is no allegation in the PRP letters or the third-party complaint to suggest that the property damage for which Stamford may be liable resulted from anything other than the dis-

posal of its waste in the ordinary course of its business over an extended period of time. On these facts, the "sudden and accidental" exception is clearly inapplicable.

Stamford urges us to adopt an alternative approach to construction of the "sudden and accidental" exception. Relying upon the reasoning of *New York v. Blank*, 27 F.3d 783, 791 (2d Cir.1994), which applied New York law, Stamford argues that the exception saves its coverage because the claims "do not rule out the possibility" that the contamination was caused by a sudden and accidental event. No doubt, one can conjure up a sudden and accidental event that is not absolutely incompatible with the set of allegations in any complaint. Here, it may be that a carter's truck suddenly overturned at the site and accidentally spilled its contents here instead of there, or that the pollutants suddenly and accidentally escaped from some containment basin or tank, and reached some of the polluted property by that route. And it may be that such a thing *could* be alleged; but no allegation in the third-party complaint or the PRP letters gives one a reason to think that such a thing happened. We do not look beyond the four corners of a pleading even to take account of demonstrable circumstances that might defeat coverage: by the same token, we will not hypothesize or imagine episodes or events that cannot be found among the allegations, and cannot reasonably be deduced from them. The pollution exclusion would lose all force if it could be defeated by the mere imagining of any sudden accident that is not actually foreclosed by the allegations of the underlying complaint. The PRP letters and third-party complaint (treated for argument's sake as "suits" for "damages") do not, within their four corners, state or support the inference that the cause of the property damage was sudden and accidental.

## CONCLUSION

The judgment of the district court, denying Stamford's motion for partial summary judgment and dismissing its breach of contract claim, is affirmed. TIG's cross-appeal is dismissed as moot.