# SCHILBERG INTEGRATED METALS CORPORATION *v.* CONTINENTAL CASUALTY COMPANY ET AL.
## (SC 16729)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued October 22, 2002—officially released April 22, 2003

*Brian P. Daniels*, with whom was *John R. Bashaw*, for the appellant (plaintiff).

*Joel M. Fain*, with whom, on the brief, was *Erich H. Gaston*, for the appellees (defendants).

*Daniel P. Scapellati, John B. Farley, Laura A. Foggan,* pro hac vice, and *John C. Yang,* pro hac vice, filed a brief for the Insurance Environmental Litigation Association as amicus curiae.

*Opinion*

ZARELLA, J. This appeal arises from a dispute over whether various insurance policies issued by the defendant insurers required them to defend the plaintiff insured in an administrative action brought by the Pennsylvania department of environmental resources (department). The plaintiff, Schilberg Integrated Metals Corporation, brought this action against the defendants, Continental Casualty Company, Transportation Insurance Company and Valley Forge Insurance Company, seeking, inter alia, damages for breach of contract after the defendants had declined to provide the plaintiff with a defense in an administrative action brought by the department against the plaintiff. Both the plaintiff and the defendants filed separate motions for summary judgment. The trial court denied the plaintiff's motion, granted the defendants' motion and rendered judgment in favor of the defendants, from which the plaintiff appealed. We affirm the judgment of the trial court.

The record discloses the following undisputed facts and procedural history. The plaintiff is a Connecticut corporation that specializes in scrap copper processing and recovery of metal from insulated wire. In December, 1981, the plaintiff, in conjunction with Phillip Cardinale, arranged for the treatment and disposal of waste containing hazardous substances at a site located in the state of Pennsylvania (site) at which Cardinale had maintained an unauthorized scrap, wire and metal reclamation and waste disposal facility. The arrangement between the plaintiff and Cardinale involved the removal of insulated wire from the plaintiff's Connecti-

cut facility, the processing of the wire at Cardinale's facility in Pennsylvania, and the return of residual copper derived from the processed wire to the plaintiff. The processing of the insulation from the wires resulted in the release of hazardous substances at the site.

In 1988, an inspection of the site revealed significant contamination to the on-site soil.[1] In light of the inspection results, the department took various remedial actions pursuant to its authority under the Pennsylvania Hazardous Sites Cleanup Act (act), Pa. Stat. Ann. tit. 35, § 6020.101 et seq. The department filed an administrative action against several parties, including the plaintiff, seeking reimbursement for the remediation costs it had incurred in connection with its cleanup efforts. The plaintiff, in turn, requested that the defendants, pursuant to the various insurance policies that they had issued to the plaintiff, provide a defense to the department's action. The defendants declined the plaintiff's request.

The provisions of the insurance policies on which the plaintiff bases its claim can be summarized as follows. From 1981 to 1985, the defendants issued to the plaintiff policies containing three types of insurance coverage: comprehensive general liability coverage; umbrella coverage; and excess coverage. Pursuant to those policies, the defendants agreed to provide coverage for any losses sustained as the result of bodily injury or property damage. Furthermore, each of the policies required each defendant to defend the plaintiff in any action seeking damages for bodily injury or property damage, regardless of the merits of the claim. Coverage under the policies was limited, however, by a pollution exclusion clause, which excluded from coverage any claims arising from the discharge of pollutants. The pollution

---

[1] The site investigation also revealed the presence of hazardous waste in several residential wells situated around the contaminated site.

exclusion clause itself was limited by an exception for "sudden and accidental" occurrences. Under this exception, coverage under the policy is not excluded if the discharge of pollutants is "sudden and accidental . . . ."[2]

Insurance policies issued to the plaintiff by the defendants after 1985 did not include an exception for sudden and accidental occurrences. Rather, the policies issued after 1985 contained an absolute pollution exclusion clause that excluded from coverage any bodily injury or property damage arising out of the discharge of pollutants, regardless of the manner of discharge.[3]

[2] The pollution exclusion clause that includes the exception for sudden and accidental occurrences provides in relevant part: "[Coverage under the policy is excluded for] *Bodily Injury* or *Property Damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental . . . ."

[3] The policies containing the absolute pollution exclusion clause excluded coverage for: " 'Bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

"(a) At or from premises you own, rent or occupy;

"(b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

"(c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

"(d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

"(i) if the pollutants are brought on or to the site or location in connection with such operations; or

"(ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

"(2) Any loss, costs, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

"Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

In response to the defendants' refusal to defend the plaintiff, the plaintiff filed this action against the defendants alleging, inter alia, breach of contract. The defendants filed an answer in which they denied all legal claims and asserted, by way of a special defense, that "[t]here is no coverage for the plaintiff's claims by reason of the pollution exclusions contained in any applicable policy of insurance."

Both the plaintiff and the defendants filed separate motions for summary judgment. In their respective motions, the parties asserted that they were entitled to judgment as a matter of law on the basis of the nature of the allegations asserted by the department in its administrative action against the plaintiff and the substance of the provisions contained in the insurance policies. Specifically, the defendants claimed that the pollution exclusion clauses in the policies did not obligate the defendants to provide a defense for the plaintiff in the department's administrative action. The plaintiff claimed, to the contrary, that the nature of the allegations underlying the department's action against the plaintiff did not eliminate the possibility of coverage and, therefore, that the defendants were obligated to provide a defense. In its motion, the plaintiff also sought summary judgment as to the defendants' special defenses.[4] The trial court granted the defendants' motion for summary judgment and rendered judgment thereon, concluding that, as a matter of law, the allegations underlying the department's administrative action against the plaintiff fell within the purview of the pollution exclusion clauses contained in the insurance poli-

---

[4] The defendants asserted a total of eleven special defenses. In addition to the special defense based on the existence of the pollution exclusion clauses in the policies, the defendants also alleged, inter alia, that the plaintiff's claims were barred by the doctrine of collateral estoppel and the known loss doctrine, and that the policies at issue were rendered void by virtue of the plaintiff's allegedly wilful concealment or misrepresentation. None of these additional special defenses is at issue in this appeal.

cies issued by the defendants and that, consequently, the defendants had no duty to defend the plaintiff. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

The sole issue in this appeal is whether the defendants were required to defend the plaintiff in the department's administrative action pursuant to the terms of the various insurance policies issued by the defendants to the plaintiff. The plaintiff advances several arguments in support of its contention that the trial court improperly granted the defendants' motion for summary judgment. The plaintiff argues, first, that the trial court improperly concluded that the defendants' duty to defend was not triggered under the policies containing the sudden and accidental discharge exception to the pollution exclusion clauses. Second, the plaintiff argues that the trial court improperly concluded that the absolute pollution exclusion clauses precluded coverage when the discharge of pollutants resulted from the plaintiff's central business activity. Third, the plaintiff argues that, owing to the defendants' failure to file the pollution exclusion clauses with the appropriate regulatory body, the trial court improperly granted summary judgment in favor of the defendants on the basis of the substance of those clauses. Finally, the plaintiff argues that the trial court improperly denied its motion to compel discovery of certain documents pertaining to the drafting of the policies at issue in order to establish that the policy language was susceptible to more than one interpretation. We address, and reject, each of these arguments seriatim.

"Before addressing the [plaintiff's] arguments, we set forth the applicable standard of review of a trial court's ruling on motions for summary judgment. Summary judgment shall be rendered forthwith if the pleadings,

affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. . . . When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Citations omitted; internal quotation marks omitted.) *Dept. of Social Services* v. *Saunders*, 247 Conn. 686, 696–97, 724 A.2d 1093 (1999). In the present case, "[t]he trial court was presented with cross motions for summary judgment based on undisputed facts. Therefore, our review is plenary and we must determine whether the court's conclusions are legally and logically correct and are supported by the record." (Internal quotation marks omitted.) Id., 697.

"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 550, 791 A.2d 489 (2002).

"We emphasize . . . that [a]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however,

for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Id.

I

The plaintiff's first claim concerns the sudden and accidental discharge exception to the pollution exclusion clauses. Specifically, the plaintiff claims that, in ruling on the parties' motions for summary judgment, the trial court improperly concluded that: (1) the plaintiff, rather than the defendants, had the burden of proof with respect to whether the discharge of pollutants was "sudden and accidental" within the meaning of the policy terms; and (2) the allegations underlying the department's administrative action did not trigger the defendants' duty to defend in light of the sudden and accidental discharge exception in the pollution exclusion clauses.

A

The plaintiff argues that, under Connecticut law, "the insurer . . . bears the burden of establishing that the underlying allegations eliminate every reasonable possibility that the [discharge of pollutants was] 'sudden and accidental' . . . ."[5] We disagree and conclude that this

[5] In support of its contention, the plaintiff suggests that every court that has considered this issue under Connecticut law has held accordingly, citing several decisions, including *Edo Corp.* v. *Newark Ins. Co.*, 898 F. Sup. 952, 961–62 (D. Conn. 1995), *Edo Corp.* v. *Newark Ins. Co.*, 878 F. Sup. 366, 371 (D. Conn. 1995), *Remington Arms Co.* v. *Liberty Mutual Ins. Co.*, 810 F. Sup. 1406, 1413 and n.2 (D. Del. 1992) (interpreting Connecticut law), *REO, Inc.* v. *Travelers Cos.*, Superior Court, judicial district of New Haven, Docket No. CV95-0372522S (May 20, 1998), and *Cole* v. *East Hartford Estates Ltd. Partnership*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV95-0547179S (May 15, 1996). We note that our decision in *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*,

issue is controlled by our recent decision in *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 527 (*Buell*).

In *Buell*, the insured, Buell Industries, Inc. (Buell), was a metal parts manufacturer that sought indemnification under certain insurance policies for the cost of remediating environmental contamination at two of its manufacturing facilities. Id., 530, 532. As in the present case, the insurance policies at issue in *Buell* each contained a pollution exclusion clause that "exclud[ed] from coverage any claims that [were] the result of the discharge of pollutants." Id., 534. The policies also each contained a sudden and accidental discharge exception that "reinstat[ed] coverage when the release of pollutants [was] sudden and accidental." (Internal quotation marks omitted.) Id. The insurers denied coverage under the insurance policies, prompting Buell to file an action seeking reimbursement for the costs that it had incurred as a result of its remediation efforts. Id., 532. The insurers moved for summary judgment, claiming, inter alia, that Buell was not entitled to coverage under the policies based on the provisions of the pollution exclusion clauses contained therein. Id., 535. The trial court agreed and concluded "that there exist[ed] no genuine issue of material fact that any of the discharges were, as required by the insurance policies, 'sudden.' " Id. On appeal, Buell challenged the trial court's conclusion that the sudden and accidental discharge exception was not implicated under the facts of the case. Id., 535–36.

In *Buell*, we addressed an ancillary issue raised by both parties concerning who should bear the burden of proof regarding the applicability of the sudden and accidental discharge exception. Id., 550–51. Buell contended that the insurers, as summary judgment mov-

supra, 259 Conn. 527, was unavailable to the parties when they prepared their briefs for presentation to this court.

ants, had the burden of proving the absence of a sudden and accidental discharge. Id., 550. We disagreed, concluding that "when a policy contains an exception within an exception, the insurer need not negative the internal exception; rather, the [insured] must show that the exception from the exemption from liability applies." (Internal quotation marks omitted.) Id., 551. Therefore, within the context of the particular insurance policies at issue in *Buell*, "the burden properly rest[ed] with the insured to prove that the sudden and accidental [discharge] exception [was] applicable." (Internal quotation marks omitted.) Id. We based our conclusion on the policy consideration that "[s]hifting the burden to establish the exception conforms with an insured's general duty to establish coverage where it would otherwise not exist, provides the insured with an incentive to strive for early detection that it is releasing pollutants into the environment and appropriately places the burden of proof on the party having the better and earlier access to the actual facts and circumstances surrounding the discharge . . . ." (Internal quotation marks omitted.) Id., quoting *Northville Industries Corp.* v. *National Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 634, 679 N.E.2d 1044, 657 N.Y.S.2d 564 (1997).

Although our decision in *Buell* resolved this burden proving issue within the context of the duty to indemnify, our resolution of the same issue within the context of the duty to defend—the context we are presented with in the present case—compels the same analysis. Within either context, our analysis focuses on whether the insured's alleged discharge of pollutants falls within the sudden and accidental discharge exception to the pollution exclusion clause. We previously have explained that when "a complaint in an action . . . states a cause of action against the insured which appears to bring the claimed injury within the policy

coverage, it is the contractual duty of the insurer to defend the insured in that action . . . ." *Keithan* v. *Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 138, 267 A.2d 660 (1970); accord *Stamford Wallpaper Co.* v. *TIG Ins.*, 138 F.3d 75, 79 (2d Cir. 1998). "[I]f the complaint [however] alleges a liability which the policy does not cover, the insurer is not required to defend." (Internal quotation marks omitted.) *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois*, 247 Conn. 801, 807, 724 A.2d 1117 (1999). Accordingly, the duty to defend necessarily depends on whether the claim falls within the policy coverage. For purposes of the present case, the issue of whether the allegations underlying the department's administrative action fall within the policy coverage depends on whether the plaintiff's alleged discharge of pollutants was sudden and accidental. Therefore, if the insured has the burden of proving the applicability of the sudden and accidental discharge exception in the context of the duty to indemnify; *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 551; we can discern no reason, nor does the plaintiff offer one, as to why the insured should not shoulder that burden in the context of the duty to defend. The policy reasons underlying the allocation of the burden of proof that we announced in *Buell* apply with equal force in the context of the duty to defend. We therefore conclude that the burden of proving the applicability of the sudden and accidental discharge exception in the present case properly rested with the plaintiff.

In reaching this conclusion, we emphasize that an insurer's duty to defend is broader than its duty to indemnify. E.g., *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois*, supra, 247 Conn. 807. The distinction between these two duties can be attributed to the fact that, "[i]f an allegation of [a] complaint falls *even possibly* within the coverage, then the insurance

company must defend the insured." (Emphasis added; internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 399, 757 A.2d 1074 (2000). "In contrast to the duty to defend, the duty to indemnify . . . depends upon the facts established at trial and the theory under which judgment is actually [rendered] in the case." (Internal quotation marks omitted.) *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 48–49, 801 A.2d 752 (2002). Thus, our conclusion that the burden of proving the applicability of the sudden and accidental discharge exception within the context of the duty to defend rests with the insured is not inconsistent with the general principles governing the expansive scope of the duty to defend.

## B

The plaintiff also claims that the trial court improperly concluded that the allegations underlying the department's administrative action did not trigger the defendants' duty to defend pursuant to the sudden and accidental discharge exception. The plaintiff contends that the department's allegation that the plaintiff "began arranging for *treatment* and disposal of [hazardous] waste";[6] (emphasis added); did not eliminate "all reasonable possibility" of a sudden and accidental discharge of pollutants. The plaintiff makes two arguments in support of this contention. First, the plaintiff argues that "nothing in [the act's] definition of the term 'treatment' even implies . . . any inevitable release of contaminants . . . over a prolonged period of time or otherwise." According to the plaintiff, therefore, any discharge resulting from the "treatment" of insulated wire must have been sudden and accidental. To this end,

---

[6] The plaintiff specifically refers to the allegation in the department's complaint that, "[i]n December of 1981, [the plaintiff] began arranging for treatment and disposal of waste containing hazardous substances at the site . . . ."

the plaintiff claims that, in light of the "total absence of legal or factual allegations which would have defined the nature of the alleged events upon which [the department] based its 'arranged for treatment' claims against [the plaintiff], the reasonable possibility existed that the underlying action involved, at least in part, a 'sudden and accidental' [discharge] . . . ."

Second, the plaintiff offers a hypothetical scenario detailing the various economic incentives of the parties involved in the recycling activities and how these incentives support the proposition that any discharge of pollutants resulting from the plaintiff's recycling activities was sudden and accidental. The plaintiff contends that, on the basis of the foregoing arguments, the defendants were required to defend the plaintiff pursuant to the provisions of the insurance policies, and, consequently, the trial court improperly granted the defendants' motion for summary judgment. We conclude that the plaintiff has failed to meet its burden of proving the applicability of the sudden and accidental discharge exception to the pollution exclusion clauses and, therefore, that the trial court properly concluded that the pollution exclusion clauses excluded coverage under the circumstances of the present case.

"We note at the outset that it is well settled that an insurer's duty to defend . . . is determined by reference to the allegations contained in the [underlying] complaint." (Internal quotation marks omitted.) *Springdale Donuts, Inc.* v. *Aetna Casualty & Surety Co. of Illinois*, supra, 247 Conn. 807. "[I]f an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, supra, 254 Conn. 399; accord *Stamford Wallpaper Co.* v. *TIG Ins.*, supra, 138 F.3d 79. The issue we must resolve first, therefore, is whether any of the

allegations contained in the department's administrative complaint fall "even possibly within the scope of the policy, as drawn by the pollution exclusion and the sudden and accidental [discharge] exception to that exclusion." (Internal quotation marks omitted.) *Stamford Wallpaper Co.* v. *TIG Ins.*, supra, 79.

We previously have stated that, "[o]nce an insurer has satisfied its burden of establishing that the underlying complaint alleges damages attributable to the discharge or release of a pollutant into the environment, thereby satisfying the basic requirement for application of the pollution coverage exclusion provision, the burden shifts to the insured to demonstrate a reasonable interpretation of the underlying complaint potentially bringing the claims within the sudden and accidental discharge exception to exclusion of pollution coverage, or to show that extrinsic evidence exists that the discharge was in fact sudden and accidental." (Internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 552. The relevant inquiry, therefore, is not whether the substance of the department's allegations rules out the possibility of a sudden and accidental discharge, as the plaintiff suggests, but, rather, whether the plaintiff has demonstrated that a reasonable interpretation of the substance of the department's allegations potentially would bring the claims within the purview of the sudden and accidental discharge exception in the policies. Id. An insured does not satisfy its burden of proving the applicability of the sudden and accidental discharge exception, however, by the assertion of conclusory statements; id., 557–58; or reliance "on mere speculation or conjecture as to the true nature of the facts . . . ." (Internal quotation marks omitted.) Id., 558. "In determining whether the underlying complaint can be read as even potentially bringing the claim within the sudden and accidental [discharge] exception to the

exclusion of pollution coverage, a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable . . . ." (Citation omitted; internal quotation marks omitted.) *Northville Industries Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, supra, 89 N.Y.2d 634–35.

On the basis of the foregoing principles, we first must determine whether the defendants met their burden of establishing the applicability of the pollution exclusion clauses in the insurance policies. The department alleged in its complaint[7] that it was entitled to recover the costs it incurred in responding to the discharge of contaminants and hazardous substances into the soil and water at the site. The department further alleged

---

[7] The department's complaint provides in relevant part:

"1. This complaint requests that the [d]epartment be reimbursed for the costs it incurred in performing an interim response action at the . . . site . . . . The [d]epartment took action, pursuant to [§§] 501 (a) and 505 (b) of the [act] to respond to a release of contaminants and/or hazardous substances which the [d]epartment deemed necessary to protect public health, and safety and the environment.

\* \* \*

"11. [The plaintiff] is a Connecticut [c]orporation . . . . [The plaintiff] was a generator of much of the waste unlawfully processed and disposed at the site.

\* \* \*

"21. In December of 1981, [the plaintiff] began arranging for treatment and disposal of waste containing hazardous substances at the site with Phillip Cardinale.

"22. [The plaintiff's] business dealings consisting of arranging for treatment and disposal of waste containing hazardous substances continued with Anthony Cardinale after 1984 and continued until 1986.

\* \* \*

"44. As a result of the site investigations and soil and water samplings conducted over the years, it was found that the site was contaminated with ash containing high levels of lead; [polychlorinated biphenal has] been detected in soil, water and creek sediments; polycyclic aromatic hydrocarbons . . . have been found in on-site soil samples; dioxin has been found in soil at the site; and tetrachloroethylene . . . has been found in five residential wells which are situated around the site."

that the plaintiff was responsible for much of the waste that contributed to the contamination at issue. Thus, any liability that the plaintiff may incur as a result of the department's allegations must have derived from the plaintiff's discharge of hazardous substances into the land or water comprising the site. After reviewing the relevant insurance policies; see footnote 3 of this opinion; we conclude that any such discharge, as alleged in the department's complaint, that resulted in the contamination of the site, falls squarely within the purview of the pollution exclusion clauses in the policies. Thus, we now turn to the applicability of the sudden and accidental discharge exception.

We conclude that the plaintiff has failed to satisfy its burden of proving the applicability of the sudden and accidental discharge exception. First, we are not persuaded by the plaintiff's argument that the department's allegation that the plaintiff "began arranging for treatment . . . of [hazardous] waste" leaves open the possibility of a sudden and accidental discharge of pollutants. The plaintiff's argument depends on the theory that the "treatment" portion of its recycling activities did not include any disposal of waste. Neither the act's definition of "treatment"[8] nor any facts pleaded or set forth in the affidavits support this contention, however. Moreover, the department's underlying allegations shed no light on what the plaintiff contemplated with respect to the treatment of the insulated wire. Accordingly, without more information detailing what the treatment

---

[8] The act defines the term "treatment" as follows: "A method, technique or process, including neutralization, designed to change the physical, chemical or biological character or composition of a hazardous substance so as to neutralize the hazardous substance or to render the hazardous substance nonhazardous, safer for transport, suitable for recovery, suitable for storage or reduced in volume. The term includes activity or processing designed to change the physical form or chemical composition of a hazardous substance so as to render it neutral or nonhazardous." Pa. Stat. Ann. tit. 35, § 6020.103 (West 1993).

of the insulated wire in the present case entails, we cannot conclude that the plaintiff has satisfied its burden of proving the applicability of the sudden and accidental discharge exception.

Second, the plaintiff attempts to satisfy its burden of proving the applicability of the sudden and accidental discharge exception by presenting the following hypothetical scenario: On the basis of the economic incentives of the various parties to remove all of the processing by-products from the site, including those alleged by the department to have contributed to the contamination of the site, there exists a possibility that the discharge of these by-products was sudden and accidental. Specifically, the plaintiff contends that, because the profits earned by the various parties involved in the recycling process at issue in the present case were dependent on the amount of copper that could be reclaimed, there was an affirmative incentive to prevent the loss of copper to the environment. The plaintiff further contends that, in light of the fact that some of the contamination alleged by the department was the result of the discharge of copper,[9] it is reasonable to conclude that such discharge was sudden and accidental. This scenario, according to the plaintiff, viewed in conjunction with the department's allegations, raises at least an issue of material fact as to whether any of the discharge was sudden and accidental.

In proposing such a hypothetical, however, the plaintiff requires us to speculate as to an occurrence that finds no reasonable basis in the department's allega-

[9] The department alleged in its complaint that, "[o]n November 29, 1988, [the site inspector] supplied the [federal] Environmental Protection Agency with a [s]ite [i]nspection [r]eport of the . . . [s]ite. That . . . [r]eport contained a [t]oxicological [e]valuation which stated . . . [that] '[o]n-site soil and sediment samples revealed significant levels of several inorganic contaminants, including . . . copper (up to 542,000 mg/kg) . . . .'"

tions. An insured may not rely on mere speculation to establish the applicability of the sudden and accidental discharge exception, and, thus, we cannot conclude that the plaintiff has satisfied its burden in this regard. Accordingly, we agree with the reasoning employed by the United States Court of Appeals for the Second Circuit in *Stamford Wallpaper Co.* v. *TIG Ins.*, supra, 138 F.3d 75.

In *Stamford Wallpaper Co.*, the Second Circuit reviewed an insurance policy containing a pollution exclusion clause and a sudden and accidental discharge exception in determining whether, under the particular facts, the insurer's duty to defend had been triggered. Id., 78. The insured, Stamford Wallpaper Company, Inc. (Stamford Wallpaper), sought coverage under an insurance policy issued by its insurer, TIG Insurance (TIG), following "a third-party complaint seeking contribution from Stamford [Wallpaper] . . . in a cost-recovery action for the clean-up of a landfill . . . and . . . [after being] inform[ed] . . . that it [was] a potentially responsible party . . . in connection with the disposal of hazardous waste at two other disposal sites . . . ." Id., 77. Similar to the facts of the present case, Stamford Wallpaper's potential liability stemmed from an agreement that it had entered into with various recycling companies for the removal and recycling of certain waste materials, certain by-products of which eventually were sold back to Stamford Wallpaper and other businesses.[10] Id., 77–78.

After TIG declined to provide Stamford Wallpaper with a defense on the basis of a pollution exclusion clause, Stamford Wallpaper brought an action against TIG in the United States District Court for breach of

---

[10] "Each of the [recycling companies] retained by Stamford [Wallpaper was] alleged to be a source of hazardous waste at one or more of [the contaminated] sites . . . ." *Stamford Wallpaper Co.* v. *TIG Ins.*, supra, 138 F.3d 78.

contract. Id., 78. Stamford Wallpaper subsequently filed a motion for partial summary judgment, which the court denied. Id. The court concluded that: "all of the allegations made against Stamford [Wallpaper] . . . fell within the scope of the policy's pollution exclusion; that none of the allegations brought the claims within the sudden and accidental [discharge] exception; that therefore none of the . . . claims [was] . . . covered by the policy; and that absent coverage, TIG had no duty to defend Stamford [Wallpaper] against those allegations." (Internal quotation marks omitted.) Id. On appeal, the Second Circuit Court of Appeals affirmed the District Court's judgment, concluding that, "[i]n order for the sudden and accidental [discharge] exception to apply, the allegations within the four corners of the complaint must raise the possibility that the event which caused the pollution-related property damage was sudden and accidental." (Internal quotation marks omitted.) Id., 80. In reaching this conclusion, the court rejected Stamford Wallpaper's argument that the sudden and accidental discharge exception saves coverage when claims that are brought against the insured "do not rule out the possibility that the contamination was caused by a sudden and accidental event." (Internal quotation marks omitted.) Id., 81. The court reasoned that, "[n]o doubt, one can conjure up a sudden and accidental event that is not absolutely incompatible with the set of allegations in any complaint." Id. Thus, the court limited the scope of its analysis to a review of the complaint itself and refused to "hypothesize or imagine episodes or events that cannot be found among the allegations, and cannot reasonably be deduced from them." Id. According to the court, "[t]he pollution exclusion [clause] would lose all force if it could be defeated by the mere imagining of any sudden accident that is not actually foreclosed by the allegations of the underlying complaint." Id. Therefore, after looking within the four

corners of the third party's complaint,[11] the court held that the sudden and accidental discharge exception was inapplicable in that case because the allegations contained in the complaint did not "state or support the inference that the cause of the property damage was sudden and accidental." Id.

The plaintiff essentially urges that we accept an argument similar to the one that the court rejected in *Stamford Wallpaper Co.* The plaintiff contends that "[n]o factual allegations appear anywhere in [the department's] . . . [c]omplaint eliminating all reasonable possibility of at least some coverage," and, therefore, "at a minimum, the reasonable possibility that at least one release which allegedly occurred during [the plaintiff's] recycling activities was sudden and accidental." (Internal quotation marks omitted.) As we explained previously, however, the plaintiff cannot prevail on its claim merely by relying on the fact that the allegations in the underlying complaint do not eliminate all reasonable possibility of a sudden and accidental discharge of pollutants. Rather, the plaintiff must demonstrate a reasonable interpretation of the complaint that brings the claim within the sudden and accidental discharge exception. *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 552. In our view, the plaintiff's economic incentive hypothetical, which finds no reasonable basis in the department's allegations,

---

[11] In *Stamford Wallpaper Co.*, "[t]he underlying liability claims [arose from] . . . a third-party complaint seeking contribution from [the insured] under the Comprehensive Environmental Response, Compensation and Liability Act [42 U.S.C. § 9601 et seq.] . . . in a cost-recovery action for the clean-up of a landfill . . . and two letters from the [federal] Environmental Protection Agency . . . informing [the insured] that it is a potentially responsible party . . . in connection with the disposal of hazardous waste at two other disposal sites . . . ." *Stamford Wallpaper Co.* v. *TIG Ins.*, supra, 138 F.3d 77. Thus, when the court in *Stamford Wallpaper Co.* referred to the "complaint," it actually was referring to the complaint and the letters from the Environmental Protection Agency.

does not provide such a reasonable interpretation. Were we to hold otherwise, an insurer's duty to defend could arise in a virtually endless number of situations, constrained only by the imagination of the insured, regardless of what is, in fact, alleged in the underlying complaint. See *Stamford Wallpaper Co.* v. *TIG Ins.*, supra, 138 F.3d 81.

The plaintiff simply has failed to demonstrate a reasonable possibility that its discharge of pollutants was sudden and accidental. The department alleged that the plaintiff's discharge of pollutants occurred over a span of five years and was the result of the plaintiff's ongoing business relationship with Cardinale. See footnote 7 of this opinion. We agree with the court in *Stamford Wallpaper Co.* that "[t]here is nothing accidental about such an arrangement, which is characteristic of an ordinary course of business." *Stamford Wallpaper Co.* v. *TIG Ins.*, supra, 138 F.3d 80. Moreover, the plaintiff's economic incentive hypothetical does not convince us that there is a reasonable possibility that the plaintiff's discharge of pollutants was accidental. We previously have stated that, "[f]or a discharge to be a covered event under the policy, it must be *both* sudden and accidental. If one or the other of these conditions is absent, then the discharge is not a covered incident." (Emphasis in original.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 539. The department's allegations do not support the plaintiff's contention that any of the plaintiff's discharge of pollutants was accidental, and the plaintiff has failed to provide a reasonable interpretation of the department's allegations to convince us otherwise. Consequently, we conclude that the trial court properly determined that a genuine issue of material fact did not exist as to whether the plaintiff's discharge of pollutants was sudden and accidental.

## II

The plaintiff next claims that the trial court improperly concluded that the absolute pollution exclusion clauses, which can be found in the policies not containing the sudden and accidental discharge exceptions, are clear and unambiguous as applied to the facts of this case and, accordingly, precluded coverage under the circumstances of the case. The plaintiff contends that the language of the pollution exclusion clauses reasonably cannot be read to exclude coverage for all pollution liability incurred, including that which resulted from the plaintiff's central business activity or what the plaintiff refers to as its "central recycling activities." Such a result, the plaintiff argues, would render the insurance policies issued by the defendants meaningless. The plaintiff contends, therefore, that, within the context of its central recycling activities, the absolute pollution exclusion clauses are ambiguous and, accordingly, must be construed in favor of the insured. We disagree.

"[T]he terms of an insurance policy are to be construed according to the general rules of contract construction. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Citations omitted; internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania,*

231 Conn. 756, 769–70, 653 A.2d 122 (1995) (*Heyman Associates*). "Our jurisprudence makes clear, however, that [a]lthough ambiguities are to be construed against the insurer, when the language is plain, no such construction is to be applied. . . . Indeed, courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Citations omitted; internal quotation marks omitted.) Id., 770–71.

The plaintiff relies on a footnote in our decision in *Heyman Associates*, in support of its contention that the otherwise clear and unambiguous absolute pollution exclusion clause is rendered ambiguous within the context of an insured's central business activity. In *Heyman Associates*, we reviewed an absolute pollution exclusion clause that contained language identical in all material respects to the language used in the absolute pollution exclusion clauses contained in the policies that the defendants had issued to the plaintiff. Compare id., 761–62 n.5 with footnote 3 of this opinion. We held that the policy language at issue in *Heyman Associates* was clear and unambiguous. See *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, supra, 231 Conn. 771–74. In footnote 20 of *Heyman Associates*, we distinguished a case relied on by the insured in which the North Carolina Court of Appeals held that an absolute pollution exclusion clause virtually identical to the clause at issue in *Heyman Associates* was ambiguous "as applied to claims arising from property damage caused by [a certain pollutant and that] occurred in the course of the insured's 'regular business activities' . . . ." (Citation omitted.) Id., 776 n.20, citing *West American Ins. Co.* v. *Tufco Flooring East, Inc.*, 104 N.C. App. 312, 320–21, 409 S.E.2d 692 (1991), discretionary review improvidently allowed, 332 N.C. 479, 420 S.E.2d 826 (1992). We distinguished the North Carolina case on the ground that, in *Heyman Associates*, the insured's

storage of fuel oil, which resulted in an oil spill for which the insured sought coverage, did not constitute part of its central business activities. *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, supra, 776 n.20. Thus, contrary to the plaintiff's claim, we did not announce in *Heyman Associates* a different approach to the interpretation of clear and unambiguous pollution exclusion clauses in cases in which the pollution occurs in the course of the insured's central business activity.

Although we do not agree with the plaintiff that *Heyman Associates* supports its "central business activity" argument, the North Carolina Court of Appeals' decision in *West American Ins. Co.* v. *Tufco Flooring East, Inc.*, supra, 104 N.C. App. 312 (*West American*), on which the plaintiff also relies, does recognize the significance of an insured's central business activity. The facts of *West American*, however, are distinguishable from the facts of the present case. In *West American*, the insurance policy at issue contained a pollution exclusion clause that excluded coverage for property damage or personal injury arising from the discharge of pollutants. Id., 315. Coverage under the policy, however, could be reinstated through what the court referred to as " 'completed operations' coverage  . . . ." Id., 317. In accordance with the insurance policy, "the scope of the completed operations coverage include[d] all property damage occurring away from premises the insured own[ed] or rent[ed] and arising out of the insured's work, so long as the work [was] completed before the property damage ha[d] occurred." (Internal quotation marks omitted.) Id. The court held that the completed operations coverage overrode the pollution exclusion clause and, therefore, that the insured properly could seek coverage under the policy. Id., 317, 319.

The court based its holding, in part, on the theory that any ambiguity in the provisions of an insurance contract must be resolved in favor of the insured. Id.,

320. The court concluded that the interrelationship between the pollution exclusion clause and the completed operations coverage created an ambiguity as to whether coverage was excluded. Id., 320–21. Therefore, "[a] reasonable person in the position of [the insured] would have understood [the claims at issue] to be covered." Id. Accordingly, the court declined to allow "an insurance company to accept premiums for a commercial liability policy and then . . . hide behind ambiguities in the policy and deny coverage for good faith claims that arise during the course of the insured's normal business activity." Id.

Although the correlation between the insured's central business activity and the damage resulting from the insured's discharge of pollutants formed part of the factual backdrop in *West American*, the factor crucial to the holding in that case was the ambiguity created by the existence of conflicting clauses within the policy. In the absence of conflicting clauses, such as in the present case, the "central business activity" argument is unavailing. In the present case, the substance of the department's allegations clearly place the facts of the case within the purview of the pollution exclusion clauses, and there is no conflicting language in the policy to create a tension similar to that which the court observed in *West American*. Consequently, we are unwilling to follow the North Carolina Court of Appeals' holding in *West American* under the facts of the present case.

Although the absolute pollution exclusion clauses limit the available coverage under the insurance policy, there is no evidence that the plaintiff did not get what it bargained for when it contracted with the defendants. Furthermore, the plaintiff has offered no evidence, other than conclusory statements, to suggest that the insurance policies issued by the defendants are rendered meaningless by virtue of the denial of coverage

for the discharge of pollutants. Therefore, we conclude that, "[c]ontrary to arguments posed by [the plaintiff], our construction of the absolute pollution exclusion [clauses in the present case] does not nullify the essential coverage provided by the policies; rather, the policies . . . provide coverage for a wide variety of accidents and mishaps . . . that may occur during [the plaintiff's routine business activities]." *Technical Coating Applicators, Inc.* v. *United States Fidelity & Guaranty Co.*, 157 F.3d 843, 846 (11th Cir. 1998). Accordingly, the trial court properly concluded that the clear and unambiguous language of the absolute pollution exclusion clauses in the policies excludes coverage for any liability that the plaintiff might incur in connection with its discharge of pollutants at the site.

### III

The plaintiff next claims that the trial court improperly denied its motion for summary judgment or, at a minimum, improperly granted the defendants' motion for summary judgment with respect to the defendants' fourth special defense inasmuch as the pollution exclusion clauses contained in the policies never were filed with the appropriate regulatory authority. We disagree.

We begin our analysis by reviewing the procedural history relevant to this claim. On January 19, 2000, the trial court issued a scheduling order requiring all dispositive motions to be filed by September 8, 2000, and all responses to dispositive motions to be filed by October 6, 2000. Thereafter, the defendants filed their amended answer and special defenses on September 14, 2000, in which they asserted, inter alia, the pollution exclusion as a special defense. On October 18, 2000, the court amended the scheduling order by extending until November 15, 2000, the deadline for filing summary judgment motions. Both the plaintiff and the defendants subsequently filed motions for summary judgment. In

connection with its motion for summary judgment, the plaintiff asserted for the first time that the pollution exclusion clauses were unenforceable owing to the defendants' failure to file them with the insurance commissioner pursuant to General Statutes § 38a-676.[12] In response, on December 6, 2000, the defendants filed a memorandum of law in support of their objection to the plaintiff's motion for summary judgment, claiming that the plaintiff was required to plead the failure to file issue specially in a reply as a matter in avoidance of the affirmative allegations in the defendants' special defense. Thus, the defendants argued that it was improper for the plaintiff to raise the defendants' failure to file in its motion for summary judgment. Notwithstanding the defendants' objection, the plaintiff proceeded to oral argument on the parties' summary judgment motions on December 18, 2000, without having filed a reply to the defendants' special defenses. It was not until December 21, 2000, after oral argument, that the plaintiff filed a reply, asserting by way of avoidance that the pollution exclusion clauses in any applicable policy were unenforceable inasmuch as the defendants had failed to file them with the insurance commissioner in accordance with § 38a-676.

The trial court declined to consider the plaintiff's claim regarding the unenforceability of the pollution

---

[12] General Statutes § 38a-676 provides in relevant part: "(c) The form of any insurance policy or contract the rates for which are subject to the provisions of sections 38a-663 to 38a-696, inclusive, other than fidelity, surety or guaranty bonds, and the form of any endorsement modifying such insurance policy or contract, shall be filed with the Insurance Commissioner prior to its issuance. The commissioner shall adopt regulations in accordance with the provisions of chapter 54 establishing a procedure for review of such policy or contract. If at any time the commissioner finds that any such policy, contract or endorsement is not in accordance with such provisions or any other provision of law, the commissioner shall issue an order disapproving the issuance of such form and stating his reasons for disapproval. The provisions of section 38a-19 shall apply to any such order issued by the commissioner."

exclusion clauses. The trial court concluded that "it [was] procedurally improper for [the plaintiff] to challenge [the defendants'] regulatory compliance in its motion for summary judgment" in light of the fact that the defendants had pleaded the pollution exclusion as a special defense. Pursuant to Practice Book § 10-57, a "[m]atter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply." According to the trial court, the plaintiff's claim that the defendants had failed to file the pollution exclusion clauses with the insurance commissioner having been a matter in avoidance of a special defense, the plaintiff was required to plead the failure to file issue in a reply to the defendants' special defenses.[13] Therefore, because the plaintiff raised its claim in a motion for summary judgment rather than a reply to the defendants' special defenses, the claim was not properly before the court. We conclude that the trial court did not abuse its discretion in declining to consider the plaintiff's claim.

As an initial matter, we set forth the appropriate standard of review. We previously have afforded trial courts discretion to overlook violations of the rules of practice and to review claims brought in violation of those rules as long as the opposing party has not raised a timely objection to the procedural deficiency. See, e.g., *Pepe* v. *New Britain*, 203 Conn. 281, 285–86, 524 A.2d 629 (1987) (defendant's failure to file special defense in violation of rules of practice did not preclude consideration of that defense when plaintiffs failed to object). It necessarily follows, therefore, that, when a party properly objects to a violation of the rules of

---

[13] The trial court also indicated that, even if it had overlooked the procedural deficiencies in this instance, the plaintiff still would not have been able to prevail as it had not met its burden of proof with respect to its claim that the pollution exclusion clauses were unenforceable by virtue of the defendants' failure to file them with the insurance commissioner.

practice, the trial court may disregard the improperly raised claim if doing so is not an abuse of discretion. Accordingly, in the present case, we review the trial court's decision under an abuse of discretion standard.[14]

When reviewing claims under an abuse of discretion standard, "the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . ." (Internal quotation marks omitted.) *Roberto* v. *Honeywell, Inc.*, 33 Conn. App. 619, 624, 637 A.2d 405, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994). Furthermore, we have stated in other contexts in which an abuse of discretion standard has been employed that "this court will rarely overturn the decision of the trial court." *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 521, 686 A.2d 481 (1996).

We turn, therefore, to the trial court's decision to determine whether there has been an abuse of discretion. The trial court correctly observed that Practice Book § 10-57 required the plaintiff specially to plead its claim concerning the defendants' failure to file the pollution exclusion clauses in a reply to the defendants' special defenses. See, e.g., *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 163, 464 A.2d 18 (1983) (plaintiffs' claim of fraudulent concealment not properly

---

[14] The plaintiff claims that because it raised its claim in a motion for summary judgment, our review is plenary. In making this claim, however, the plaintiff mischaracterizes the issue. Although we do agree that our review of a trial court's decision on a motion for summary judgment is plenary; e.g., *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001); the narrower issue in this instance is whether the trial court was required to consider the plaintiff's claim concerning the defendants' failure to file within the context of the court's ruling on the parties' motions for summary judgment. Thus, the issue is not whether there existed a genuine issue of material fact as to whether the pollution exclusion clauses were rendered unenforceable by virtue of the defendants' failure to file them with the insurance commissioner, but, rather, whether the trial court was required to consider the plaintiff's claim in light of the plaintiff's failure to plead that claim timely in a reply to the defendants' special defenses.

before court owing to plaintiffs' failure specially to plead claim in avoidance of defendants' special defense based on statute of limitations). Consequently, in raising its claim in a motion for summary judgment rather than a reply to the defendants' special defenses, the plaintiff failed to comply with the rules of practice. Furthermore, although the plaintiff ultimately filed a reply to the defendants' special defenses, it did so over three months after the defendants had filed their special defenses. Pursuant to Practice Book § 10-8,[15] a party has fifteen days to file a reply to special defenses. Thus, even if we were to overlook the fact that the plaintiff filed its motion for summary judgment prior to filing the appropriate reply, the plaintiff nonetheless failed to comply with the rules of practice in filing its reply to the defendants' special defenses over three months after the defendants had filed their special defenses. As we previously noted, the plaintiff was made aware of the pleading discrepancy when the defendants distinctly raised the procedural issue in their December 6, 2000 memorandum of law in opposition of the plaintiff's motion for summary judgment. Consequently, the plaintiff could have filed a motion for an extension of time to file a reply or could have requested permission from the trial court at oral argument to file a late reply. The plaintiff failed to do so, however. Rather, the plaintiff simply filed the reply, after oral argument on the parties' motions for summary judgment, without any explanation for its procedural transgressions.

Thus, we conclude that the trial court did not abuse its discretion in declining to consider the plaintiff's claim, raised for the first time in connection with its

---

[15] Practice Book § 10-8 provides in relevant part: "Commencing on the return day of the writ, summons and complaint in civil actions, pleadings, including motions and requests addressed to the pleadings, shall first advance within thirty days from the return day, and any subsequent pleadings, motions and requests shall advance at least one step within each successive period of fifteen days from the preceding pleading . . . ."

motion for summary judgment, that the pollution exclusion clauses were rendered unenforceable by virtue of the defendants' failure to file them with the insurance commissioner.

IV

Finally, the plaintiff claims that the trial court improperly denied its motion to compel discovery of certain documents relating to the drafting of the insurance policies and, consequently, that the trial court's decision with respect to the parties' motions for summary judgment must be reversed. The plaintiff sought discovery of these documents for the purpose of establishing that certain language in the policies was susceptible to two or more reasonable interpretations. Our resolution of this claim is controlled by our determination in part II of this opinion, in which we concluded that the policy language is clear and unambiguous as applied to the present facts, and by our holding in *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 527. Accordingly, we conclude that the trial court's denial of the plaintiff's motion to compel discovery does not require reversal of its decision on the parties' motions for summary judgment.

In *Buell*, we defined the term "sudden" as it was used in the sudden and accidental discharge exceptions to the pollution exclusion clauses contained in various insurance policies. Id., 541. In so doing, we concluded that, within the context of the particular policies at issue, "only a temporally abrupt release of pollutants would be covered as an exception to the general pollution exclusion." Id., 540. Once we determined that the language of the policies was subject to only one reasonable interpretation, we rejected the claim that the term "sudden" was ambiguous on its face and, accordingly, declined to look to drafting history. Id., 544–45. We reasoned that, "[b]ecause we will not create ambiguity

where none exists, reference to extrinsic documentation such as drafting history is inappropriate." Id., 546.

Our decision not to refer to extrinsic documentation such as drafting history when the language in a contract is clear and unambiguous is dictated by the parol evidence rule. "As we have so often noted, the parol evidence rule is not a rule of evidence, but a substantive rule of contract law. . . . The rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages . . . in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . .

"The parol evidence rule does not of itself, therefore, forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in a writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. . . . These recognized exceptions are, of course, only examples of situations

[in which] the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Citations omitted; internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, supra, 231 Conn. 779–81.

On the basis of our determination in part II of this opinion that the absolute pollution exclusion clauses are clear and unambiguous as applied to the facts of the present case, "the parol evidence rule bars the introduction of any extrinsic evidence to vary or contradict the plain meaning of the [language contained in the] exclusions." Id., 781. Because the plaintiff sought discovery in support of its contention that the policy language was susceptible to more than one reasonable interpretation, and makes no allegations concerning mistake or fraud, "we find no occasion to refer to [the] drafting history." *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, supra, 259 Conn. 545. Consequently, even if we were to assume that the trial court erred in denying the plaintiff's motion to compel discovery, such error would have been harmless. Accordingly, we reject the plaintiff's challenge to the trial court's denial of its motion to compel discovery.[16]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[16] We note that the plaintiff raises two additional claims on appeal. First, the plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment with respect to the defendants' second special defense. Second, the plaintiff claims that the trial court improperly denied its motion to strike the defendants' first, fifth, sixth and eleventh special defenses. We need not address these claims, however, inasmuch as our holding with respect to the pollution exclusion clauses, which the defendants relied on in asserting their fourth special defense, is dispositive of the duty to defend issue.