******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NICHOLAS CRISMALE *v.* CHRISTOPHER ANDREW
WALSTON ET AL.
(AC 40026)

Lavine, Elgo and Bright, Js.

*Syllabus*

The plaintiff, a commercial fisherman, sought to recover damages from the
named defendant, W, a seasonal fisherman, for defamation and malicious
prosecution, alleging that W falsely and maliciously stated to enforce-
ment officers of the Department of Energy and Environmental Protection
that the plaintiff was trespassing on W's clam beds and stealing his
clams. The plaintiff further alleged that, as a result of those statements,
the plaintiff was arrested on charges for which he later was found not
guilty. Following the plaintiff's arrest, W also told a newspaper reporter:
"I nailed him, and I nailed him good." The plaintiff alleged that W was
liable for slander for his statements to the enforcement officers and for
his statement to the reporter, and that he was liable for malicious
prosecution for reporting the plaintiff's alleged conduct to the enforce-
ment officers. The trial court granted W's motion for summary judgment,
concluding, as to the plaintiff's claim for malicious prosecution, that W
did not initiate or procure the criminal proceedings against the plaintiff,
and that the arrest and prosecution were based on independent findings
of probable cause by the enforcement officers. On the plaintiff's appeal
to this court, *held*:

1. The plaintiff could not prevail on his claim that there were genuine issues
   of material fact as to whether W acted with malice when he reported
   to the enforcement officers that the plaintiff was trespassing on his
   clam beds and stealing his claims, which was based on his claim that
   issues of material fact existed as to whether the qualified privilege,
   which protected W's statements to the enforcement officers, could be
   defeated because the statements were made with malice: W produced
   evidence that demonstrated that he had a reasonable and good faith
   belief that the plaintiff was trespassing and stealing when he spoke with
   the enforcement officers, including an affidavit in which W attested
   that he saw the plaintiff, through binoculars, operating his boat on W's
   shellfishing lot and that he saw that clams were being harvested on the
   boat, affidavits in which enforcement officers, who determined that
   there was probable cause to arrest the plaintiff, attested that the plaintiff
   was on W's lot and that he was shellfishing on that lot, and deposition
   testimony from the plaintiff's workers that they had been harvesting
   clams until the enforcement officers approached the boat, and although
   the plaintiff submitted evidence that could demonstrate that he was not
   actively shellfishing on W's lot at the time of W's complaint to the
   department, that evidence did nothing to demonstrate that W did not
   have a reasonable and good faith belief that the plaintiff was shellfishing
   on W's lot; accordingly, the trial court properly determined that there
   was no evidence that W abused his privilege by acting with malice when
   he reported to the enforcement officers that the plaintiff was trespassing,
   shellfishing on his lot and stealing clams.

2. The plaintiff could not prevail on his claim that the trial court improperly
   rendered summary judgment on his slander claim, on the basis of W's
   statement to the newspaper reporter, after concluding that the statement
   was an opinion on a matter of public concern, namely, the plaintiff's
   arrest, that was protected by the fair comment privilege; although W's
   statement to the newspaper reporter was a statement of fact rather than
   an opinion of what might happen at the plaintiff's criminal trial, as W,
   in making his statement, was telling the reporter that he was the person
   responsible for alerting the authorities to the plaintiff's activities and
   that he detected those activities and exposed them to the enforcement
   officers, the uncontested facts established the truth of W's statement
   of fact, which created an absolute bar to the plaintiff's claim of slander,
   and, thus, summary judgment was appropriate as to that count.

3. The plaintiff's claim that there was a genuine issue of material fact as to
   whether W provided misleading information to the department, which

induced the enforcement officers to arrest the plaintiff, was unavailing; W did not initiate the plaintiff's arrest but, rather, merely reported what he had seen to the department and its enforcement officers, who then arrested the plaintiff after having conducted their own investigation, which resulted in a finding of probable cause that one or more crimes had been committed, and the plaintiff did not produce any evidence to challenge the evidence produced by W that he had acted with probable cause and without malice in reporting the plaintiff's activities to the enforcement officers.

(*One judge concurring separately*)

Argued April 10—officially released August 7, 2018

*Procedural History*

Action to recover damages for, inter alia, defamation, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Wilson, J.*, granted the motion for summary judgment filed by the defendant Jeffrey Samorajczyk et al. and rendered judgment thereon; thereafter, the court granted the named defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Jennifer Antognini-O'Neill*, for the appellant (plaintiff).

*Christian A. Sterling*, for the appellee (named defendant).

*Opinion*

BRIGHT, J. In this action alleging slander and malicious prosecution, the plaintiff, Nicholas Crismale, appeals from the summary judgment rendered by the trial court in favor of the defendant Christopher Andrew Walston.[1] The plaintiff claims that the trial court erroneously concluded that the defendant's statements were privileged and that there was no evidence that the defendant acted with malice. We affirm the judgment of the trial court.

In his complaint, the plaintiff alleges the following: He is a commercial fisherman, and the defendant is a seasonal shell fisherman. On December 14, 2011, the defendant stated to Jeffrey Samorajczyk and Todd Aaron Chemacki, enforcement officers with the Department of Energy and Environmental Protection (department), whom the plaintiff also brought an action against in their individual capacities; see footnote 1 of this opinion; that the plaintiff was trespassing on the defendant's clam beds and stealing his clams. The defendant knew that the plaintiff "was innocent," however. As a result of the defendant's statements to the enforcement officers, the plaintiff was arrested on charges for which he later was found not guilty. The plaintiff suffered economic losses by having to defend himself, and he suffered anxiety and humiliation. The defendant also told a reporter for the Hartford Courant (reporter), following the plaintiff's arrest: "I nailed him, and I nailed him good." On the basis of these facts, the plaintiff alleged that the defendant was liable for slander for his statements to the enforcement officers and for his statement to the reporter, and he was liable for malicious prosecution for reporting the plaintiff's alleged conduct to the enforcement officers.

In response to the plaintiff's complaint, the defendant filed an answer and two special defenses. In his first special defense, which addressed both the slander count and the malicious prosecution count, the defendant claimed that his statements to the enforcement officers and the reporter were privileged because they "were made in good faith, without malice, in an honest belief in the truth of the statement, and in discharge of a public or private duty." Specifically, as to the allegation that he had slandered the plaintiff by his comment to the reporter, the defendant claimed that this statement also was privileged because it was his opinion, which was based on a true fact. In his second special defense, which specifically addressed the malicious prosecution count, the defendant claimed that he had acted lawfully and with probable cause under the circumstances, and that he acted without malice, merely intending to bring the plaintiff to justice using the proper legal channels to report his information. The plaintiff pleaded a general denial in response to these defenses.[2]

On March 7, 2016, the defendant filed a motion for summary judgment on the ground that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law. Specifically, as to count one, slander, the defendant argued that his statements to the enforcement officers were "subject to qualified immunity and [were] not made with malice . . . ." As to his statement to the reporter, he argued that this statement was "privileged and does not qualify as defamation since . . . [it] was an opinion and statements of opinion are *not* considered slanderous." (Emphasis in original.) As to count two, malicious prosecution, the defendant argued that "he did not initiate or procure the institution of criminal proceedings against the plaintiff, he acted with probable cause, and there was no malice." In support of his motion for summary judgment, the defendant submitted: his own affidavit; the plaintiff's December 24, 2014 responses to interrogatories and requests for production; affidavits of Samorajczyk and Chemacki; deposition excerpts of the plaintiff's workers, Hector Avila, Santos Bertrand, and Sandoval Maynor; and an excerpt from the plaintiff's deposition.

The plaintiff filed an opposition to the defendant's motion for summary judgment, arguing that there were issues of material fact as to both remaining counts of his complaint. He attached, in support of his opposition: excerpts of testimony from his criminal trial; the affidavits of Samorajczyk and Chemacki; portions of the plaintiff's deposition; the misdemeanor summons issued to him; the transcript of the department's emergency dispatch call from the defendant and its dispatch call to enforcement officers;[3] and the reporter's article, which had been published in the Hartford Courant. Oral argument on the motion and the objection thereto was heard on September 12, 2016.

On December 27, 2016, the trial court granted the defendant's motion for summary judgment. As to the cause of action sounding in slander for the defendant's statements to the enforcement officers, the court concluded that the statements were entitled to a qualified privilege because they were made to law enforcement, in good faith and without malice, after the defendant saw the plaintiff, through binoculars, on his shellfishing lot. As to the defendant's statement to the reporter, which was made after the plaintiff had been arrested, the court concluded, in relevant part, that this statement was entitled to the "fair comment" privilege as a statement of opinion on a matter of public concern namely, the plaintiff's arrest, and that the statement amounted to the defendant's opinion of what had occurred.[4] Finally, as to the plaintiff's count for malicious prosecution, the court concluded that, on the basis of the sworn affidavits of the arresting enforcement officers, attesting that there was probable cause to support the arrest of the plaintiff, and the absence of any evidence

from the plaintiff that was contrary to those attestations, the defendant did not initiate or procure the criminal proceedings against the plaintiff, and that the arrest and prosecution were based on independent findings of probable cause by the enforcement officers. This appeal followed.

"The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *St. Pierre* v. *Plainfield*, 326 Conn. 420, 426, 165 A.3d 148 (2017).

The plaintiff claims that the court erred in the following ways when rendering summary judgment: (1) as to his allegation of slander based on the defendant's report to enforcement officers, the plaintiff claims that there were genuine issues of material fact as to whether the defendant acted with malice in reporting that the plaintiff was trespassing on his clam beds and stealing his clams; (2) as to the allegations of slander based on the defendant's statement to the reporter, the plaintiff claims that the court erred as a matter of law in concluding that the comments were entitled to the fair comment privilege because they were opinion on a matter of public interest, rather than factual assertions; and (3) as to the count for malicious prosecution, the plaintiff claims that there were genuine issues of material fact as to whether the defendant acted with malice when he provided misleading information to the department, which resulted in the plaintiff's arrest. We consider each claim in turn.

## I

## DEFAMATION BY SLANDER

The plaintiff claims that the court improperly rendered summary judgment on the first count of his complaint, which sounds in slander. He argues that there were genuine issues of material fact as to whether the defendant had acted with malice when he (1) reported

to the enforcement officers that the plaintiff was trespassing on his clam beds and stealing his clams, and (2) when he provided a statement to the reporter. We are not persuaded.

"Although defamation[5] claims are rooted in the state common law, their elements are heavily influenced by the minimum standards required by the [f]irst [a]mendment. . . . At common law, [t]o establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. . . .

"A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . . . It is well settled that for a claim of defamation to be actionable, the statement must be false . . . and under the common law, truth is an affirmative defense to defamation . . . [and] the determination of the truthfulness of a statement is a question of fact for the jury. . . . Each statement furnishes a separate cause of action and requires proof of each of the elements for defamation. . . .

"Beyond these common-law principles, there are numerous federal constitutional restrictions that govern the proof of the tort of defamation, the applicability of which varies with (a) the status of the plaintiff as a public or private figure, and (b) whether the subject of the speech is a matter of public or private concern. Thus, there are four possibilities: (1) public person/ public matter, (2) private person/public matter, (3) public person/private matter, and (4) private person/private matter. . . . The . . . elements of defamation, including the subsidiary historical facts, are . . . subject to proof under the preponderance of the evidence standard." (Citations omitted; footnote in original; footnote omitted; internal quotation marks omitted.) *Gleason* v. *Smolinski*, 319 Conn. 394, 430–32, 125 A.3d 920 (2015).

"With respect to common-law privilege defenses, we note by way of background, that [a] defendant may shield himself from liability for defamation by asserting the defense that the communication is protected by a qualified privilege. . . . When considering whether a qualified privilege protects a defendant in a defamation case, the court must resolve two inquiries. . . . The first is whether the privilege applies, which is a question of law over which our review is plenary. . . . The second is whether the applicable privilege nevertheless has been defeated through its abuse, which is a question of fact." (Internal quotation marks omitted.) Id., 432 n.32.

"Qualified privileges may be defeated by a showing, by a preponderance of the evidence; see *Miles* v. *Perry*, [11 Conn. App. 584, 590, 529 A.2d 199 (1987)]; of actual malice, also known as constitutional malice, or malice in fact. See, e.g., *Gambardella* v. *Apple Health Care, Inc.*, [291 Conn. 620, 634, 969 A.2d 736 (2009)] (common-law intracorporate communications privilege); *Goodrich* v. *Waterbury Republican-American, Inc.*, [188 Conn. 107, 114–15, 119–20, 448 A.2d 1317 (1982)] (fair comment privilege); see also *Konikoff* v. *Prudential Ins. Co. of America*, 234 F.3d 92, 99 (2d Cir. 2000) ('[t]he critical difference between common-law malice and constitutional malice, then, is that the former focuses on the defendant's attitude toward the plaintiff, the latter on the defendant's attitude toward the truth')." *Gleason* v. *Smolinski*, supra, 319 Conn. 433 n.32.

"[M]alice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive. . . . [A] qualified privilege is lost upon a showing of either actual malice, i.e., publication of a false statement with actual knowledge of its falsity or reckless disregard for its truth, or malice in fact, i.e., publication of a false statement with bad faith or improper motive. . . . Indeed . . . a showing of either actual malice or malice in fact suffices to defeat a qualified privilege in defamation cases . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, supra, 291 Conn. 630–31. "[A]ctual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. . . . Further, proof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be sufficient to support a finding of actual malice . . . although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Citations omitted; internal quotation marks omitted.) Id., 637–38.

A

The Defendant's Report to the Enforcement Officers

The plaintiff claims that the court improperly rendered summary judgment on his claim for slander on the ground that there were genuine issues of material fact regarding whether the defendant had acted with malice when he reported to the enforcement officers that the plaintiff was trespassing on his clam beds and stealing his clams. The plaintiff concedes that the statements to the enforcement officers were entitled to protection by a qualified privilege. He contends, however, that there are genuine issues of material fact as to whether the privilege could be defeated because the defendant's statements were made with malice. The

defendant argues that the plaintiff failed to produce any evidence to substantiate his malice assertion while, in contrast, the defendant produced various affidavits and other evidence that demonstrate that he had a reasonable and good faith belief that the plaintiff was trespassing and stealing when he spoke with the enforcement officers. We agree with the defendant.

Among the evidence submitted by the defendant in support of his motion for summary judgment was his own affidavit in which he averred, in relevant part, that: he leased shellfishing lot 562 in the Long Island Sound, he has used that lot for several years, and he is very familiar with its location from the coast; he watches boats from the shoreline, through his binoculars, and he has viewed boat activity crossing his leased lot; on December 14, 2011, he was looking at Long Island Sound through his binoculars when he saw the plaintiff's boat, operated by the plaintiff, harvesting clams on lot 562, and he observed this activity for more than thirty minutes; on the basis of these observations, he called the department and reported what he had witnessed; and enforcement officers later arrived at the boat.

The defendant also submitted the affidavit of Chemacki, which provided in relevant part: he has been an enforcement officer with the department since 1999; he enforces shellfishing laws on Long Island Sound; on December 14, 2011, he and Samorajczyk responded, in uniform and by police boat, to a complaint that had been made to the department dispatch regarding commercial shellfishing activity; he saw a boat, actively harvesting shellfish with its dredge in water, pulling up clams on a conveyer belt, with workers engaged in activity in the sorting area; the boat was being operated by the plaintiff; he recorded GPS navigation coordinates, which showed the boat to be on lot 562, which was leased by the defendant; the plaintiff could not produce his shellfishing license, which he was required to keep on board the boat while engaged in harvesting shellfish; and he concluded that there was probable cause that the plaintiff had engaged in activity that violated the law, including harvesting shellfish while on lot 562.

The defendant also submitted the affidavit of Samorajczyk, which provided in relevant part: he has been employed as an enforcement officer for the department since 1999 and he enforces the shellfishing laws along Long Island Sound; on December 14, 2011, he responded to a complaint that had been received by dispatch regarding commercial shellfishing; he contacted the defendant by telephone; the defendant told him that the plaintiff was actively harvesting clams on the defendant's lot; he saw the plaintiff's boat actively harvesting shellfish with its dredge in water, pulling up clams on a conveyer belt, with workers sorting the clams; the plaintiff was operating the boat; he asked the plaintiff where he was harvesting, and the plaintiff responded

that he was harvesting on lot 44 but that he was off lot by a couple hundred feet; the plaintiff did not have a shellfishing license onboard; and he concluded that there was probable cause to arrest the plaintiff for, among other things, illegally harvesting clams on lot 562.

The defendant also attached the deposition testimony of some of the plaintiff's workers, including Avila. In his deposition, Avila stated in relevant part that they had been actively harvesting clams up until when the enforcement officers approached the boat. He further testified that the conveyor belt that brought the clams from the ocean floor onto the deck of the boat was running until the enforcement officers boarded the boat, known as the Mighty Maxx. Bertrand and Maynor testified similarly in their respective depositions.

In opposition to the defendant's motion for summary judgment, the plaintiff submitted, among other things, a portion of the defendant's testimony from the plaintiff's criminal trial, which provided in relevant part: the defendant, while standing on the shoreline with binoculars, saw the plaintiff's boat from approximately 500 yards away; he could see the plaintiff operating the boat; he saw that both dredges were on the bottom and that the workers were culling clams; the boat was moving; the size of the defendant's lot is twenty acres; the boat was moving in and out of the entire twenty acres; he watched the boat for approximately one hour; and he called the department and reported what he saw.

The plaintiff also submitted a portion of his own testimony from his criminal trial, which provided in relevant part: he was off his lot on the day in question because he was turning around his boat; while he was turning around his boat, the dredge was up, off the bottom; there is a lot of speculation about the operation of his boat because it has new technology that is unfamiliar to most fishermen; and he was not clamming off his lot.

The plaintiff also submitted a portion of his own deposition testimony, which provided in relevant part: he was not harvesting clams or using the dredge when the enforcement officers approached the boat, but there were residual clams still making their way to the belt, which is twenty-seven feet long; he was not on the defendant's lot; and the defendant falsely and maliciously told enforcement officers that the plaintiff was trespassing on his clam beds and stealing his clams.

The plaintiff also submitted the Hartford Courant article on his arrest and prosecution, and he submitted an unauthenticated transcript of the dispatch report from the department, which the court declined to consider. See footnote 3 of this opinion.

Viewing this evidence in the light most favorable to the plaintiff, we conclude that the plaintiff submitted

no evidence in response to that submitted by the defendant to establish a genuine issue of material fact as to whether the defendant abused his privilege by acting with malice when he reported to the enforcement officers that the plaintiff was trespassing on his shellfishing lot and stealing his clams. The defendant submitted an affidavit in which he attested that he saw the plaintiff, through binoculars, operating his boat on the defendant's shellfishing lot and that he saw that clams were being harvested on the boat. The defendant then reported what he saw to the department and to enforcement officers, who responded by going to the plaintiff's boat. The officers attested that the plaintiff, in fact, was on the defendant's lot and that he was shellfishing on that lot. The enforcement officers also determined that there was probable cause to support an arrest of the plaintiff for, among other things, shellfishing on the defendant's lot. The plaintiff's workers also testified at their depositions that they had been harvesting clams right up until when the enforcement officers approached the boat.

Although the plaintiff submitted evidence that could demonstrate that he was not actively shellfishing on the defendant's lot at the time of the defendant's complaint to the department, that evidence did nothing to demonstrate that the defendant did not have a reasonable and good faith belief that the plaintiff, in fact, was shellfishing on lot 562. The plaintiff principally relies on three pieces of evidence from which he claims a reasonable jury could draw an inference of malice. First, he argues that the defendant had no basis for his statement that the Mighty Maxx' dredges were on the ocean floor because it was impossible for the defendant to see the ocean floor from where he was standing on the shore. Although this is true, the plaintiff ignores his own testimony that his boat had such advanced technology that other fishermen did not understand it. In fact, in his appellate brief, the plaintiff explains that "the Mighty Maxx was unlike any conventional clamming boat. It looked like something out of another universe. Most fishermen were not familiar with how it operated." Without some evidence that the defendant knew of the Mighty Maxx' advanced technology, there would be no basis for a jury to conclude that the defendant acted with reckless disregard of the truth when he opined, on the basis of his observations, through binoculars, that the dredges of the plaintiff's boat were on the ocean floor.

Second, the plaintiff argues that a reasonable jury could conclude that the defendant's statement that he saw the conveyor belt moving demonstrates malice because it was impossible for the defendant to see the conveyor belt from the shore due to the physical characteristics of the Mighty Maxx. The plaintiff's contention is without merit because the defendant never made such a statement. At the plaintiff's criminal trial, the

defendant testified to seeing the plaintiff's workers "culling clams on the table." When asked what that meant, the defendant testified that it meant "sorting them out on a table as they came up . . . in the dredge or in the suction dredge on the conveyor." Consequently, the defendant's statement was based on his observations of the workers, not on any observation of the workings of the boat.[6]

Third, the plaintiff relies on the defendant's statement to the reporter that he "nailed [the plaintiff and] nailed him good" as evidence of the defendant's malice. We are not persuaded. To the extent that statement was based on the plaintiff's reasonable conclusion from his observations as discussed previously, the statement is not evidence of actual malice.

Finally, the reasonableness of the defendant's conclusion from his observations was confirmed by the enforcement officers, who, after going onto the boat, observing harvesting taking place, confirming the position of the plaintiff's boat on the defendant's lot, and interviewing the plaintiff's workers, who said they were actively harvesting until the officers arrived, found probable cause to arrest the plaintiff for shellfishing on lot 562. Accordingly, we agree with the trial court that there was no evidence that the defendant abused his privilege by acting with malice when he reported to the enforcement officers that the plaintiff was trespassing on his shellfishing lot and stealing his clams. Summary judgment on this claim was appropriate.

B

The Defendant's Statement to the Reporter

The plaintiff also claims that the court improperly rendered summary judgment on his slander claim based on the defendant's statement to the reporter, after concluding that the statement was an opinion on a matter of public concern, protected by the fair comment privilege. The plaintiff asserts that this was an error in law because the statement was one of fact, rather than opinion. He contends that, when making this statement, the defendant was stating, as a matter of fact, that the plaintiff was a poacher. The defendant argues that his statement to the reporter is privileged and that it does not qualify as defamation because it expresses his opinion on a matter of public importance, namely, the plaintiff's arrest and criminal trial, and, therefore, that the court properly determined that it was protected as fair comment. We agree with the plaintiff that the defendant's statement was a statement of fact; we disagree, however, that the statement could be considered defamatory.

"To prevail on a common-law defamation claim, a plaintiff must prove that the defendant published false statements about [him] that caused pecuniary harm. *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals*,

*Inc.*, 234 Conn. 1, 27, 662 A.2d 89 (1995). To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion. See *Mr. Chow of New York* v. *Ste. Jour Azur S.A.*, 759 F.2d 219, 230 (2d Cir. 1985) (no liability where restaurant review conveyed author's opinion rather than literal fact); *Hotchner* v. *Castillo-Puche*, 551 F.2d 910, 913 [2d Cir.] ('[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be') [cert. denied sub nom. *Hotchner* v. *Doubleday & Co.*, 434 U.S. 834, 98 S. Ct. 120, 54 L. Ed. 2d 95 (1977)]." *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 795–96, 734 A.2d 112 (1999). In a civil action for defamation, where the protected interest is the plaintiff's personal reputation, the rule in Connecticut is that the truth of the allegedly defamatory statement of fact provides an absolute defense. See *Goodrich* v. *Waterbury Republican-American, Inc.*, supra, 188 Conn. 112.

Whether a statement is an assertion of a fact or an assertion of an opinion is a question of law. Id., 110–11. "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. . . . In a libel action, such statements of fact usually concern a person's conduct or character. . . . An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact. . . .

"This distinction between fact and opinion cannot be made in a vacuum, however, for although an opinion may appear to be in the form of a factual statement, it remains an opinion if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated. . . . Thus, while this distinction may be somewhat nebulous . . . [t]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 111–12.

Here, the defendant, when interviewed by a reporter writing a newspaper article on the plaintiff's arrest, stated: "I nailed him, and I nailed him good." In his appellate brief, the plaintiff cites the definition of "nail" from Webster's Third New International Dictionary (1993). He states: "In this context, to 'nail' means 'to catch, trap . . . to detect and expose.' " Accepting the definition provided by the plaintiff, it appears clear to us that the defendant was telling the reporter that he was the person responsible for alerting the authorities to the plaintiff's activities; he detected those activities

and exposed them to the enforcement officers, which is exactly what the parties agree happened in this case. Consequently, the defendant was stating a fact of what had happened, as opposed to an opinion of what might happen at the plaintiff's criminal trial.

We already have concluded that the plaintiff provided no evidence of malice in the defendant's report to the enforcement officers, and that the facts demonstrate that, after the enforcement officers conducted their own investigation, those officers found probable cause to arrest the plaintiff. See part I A of this opinion. Although the plaintiff after a criminal trial was found not guilty by a jury, that finding does not have any effect on the fact that the defendant, in good faith, reported the plaintiff's actions to the enforcement officers, even if it ultimately turned out that the state could not prove the resultant criminal charges against the plaintiff, and, further, even if the defendant had misconstrued the situation he reported, perhaps because of the advanced technology in the plaintiff's boat. By virtue of the uncontested facts of this case, as well as our analysis in part I A of this opinion, there is nothing false in the defendant's statement to the reporter; the defendant did alert the authorities to what he had seen, which, then, after investigation, prompted the plaintiff's arrest, which was based on probable cause. Accordingly, because the uncontested facts establish the truth of the defendant's statement of fact, the plaintiff's slander claim is barred. See *Goodrich* v. *Waterbury Republican-American, Inc.*, supra, 188 Conn. 114 ("[w]e need not inquire further, however, since the plaintiff conceded . . . that these statements were true, and this concession creates an absolute bar to his claim of libel as to these statements"). Accordingly, summary judgment was appropriate on this claim.

## II

## MALICIOUS PROSECUTION

Finally, the plaintiff claims that "there is a genuine issue of material fact as to whether the defendant provided misleading information to the [department, which] . . . induced the [enforcement] officers to arrest the plaintiff." The defendant argues that he did not initiate the plaintiff's arrest, but, rather, he merely reported what he had seen to the department and its enforcement officers; those officers then arrested the plaintiff after having conducted their own investigation, which resulted in a finding of probable cause that one or more crimes had been committed. The defendant also argues that the plaintiff produced no evidence that he pressured the enforcement officers or that his report was based on anything other than a reasonable and good faith belief that the plaintiff was trespassing and illegally harvesting the defendant's clams. We agree with the defendant.

"An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice. . . . The law governing malicious prosecution seeks to accommodate two competing and ultimately irreconcilable interests. It acknowledges that a person wrongly charged with criminal conduct has an important stake in his bodily freedom and his reputation, but that the community as a whole has an even more important stake in encouraging private citizens to assist public officers in the enforcement of the criminal law." (Citation omitted; internal quotation marks omitted.) *Bhatia* v. *Debek*, 287 Conn. 397, 404–405, 948 A.2d 1009 (2008).

Having concluded in part I A of this opinion that the defendant produced evidence that he had acted with probable cause and without malice in reporting the plaintiff's activities to the enforcement officers, and that the plaintiff produced no counterevidence, we conclude that the plaintiff, as a matter of law, cannot establish that the court improperly rendered summary judgment on this count of his complaint.

The judgment is affirmed.

In this opinion ELGO, J., concurred.

[1] The plaintiff also brought claims against two enforcement officers, Jeffrey Samorajczyk and Todd Aaron Chemacki, from the Department of Energy and Environmental Protection, in their individual capacities only. We note that Chemacki is referred to as Chenacki in the plaintiff's complaint and in the summons. Various pleadings, however, set forth his surname as Chemacki, and his own affidavit also provides that his surname is Chemacki. We, therefore, refer to him in this opinion as Chemacki. On April 21, 2016, the trial court rendered summary judgment in favor of Samorajczyk and Chemacki. The merits of that judgment are not before us. Throughout this opinion, we, therefore, refer to Walston as the defendant.

[2] Practice Book § 10-57 requires: "Matter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. Such a reply may contain two or more distinct avoidances of the same defense or counterclaim, but they must be separately stated."

The plaintiff in this case failed to specially plead malice as an exception to the defendant's special defense of qualified privilege and, instead, pleaded a general denial. He did, however, allege in his complaint that the defendant knew that the plaintiff was innocent when the defendant reported to the department that the plaintiff was stealing his clams. The defendant did not object when the plaintiff raised malice as a matter in avoidance in his opposition to the defendant's motion for summary judgment, and the trial court considered the malice allegation as though it had been specially pleaded in avoidance. We note that our Supreme Court previously has afforded the trial court "discretion to overlook violations of the rules of practice and to review claims brought in violation of those rules as long as the opposing party has not raised a timely objection to the procedural deficiency." *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 273, 819 A.2d 773 (2003); see also *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 303, 94 A.3d 553 (2014) ("[t]hus, we conclude that the plaintiff's failure to plead specifically his entitlement to a particular . . . doctrine pursuant to Practice Book § 10-57, while not a good practice, does not operate as a bar or waiver of that doctrine if the record demonstrates that the defendant, nevertheless, was sufficiently

apprised of the plaintiff's intention to rely on that doctrine and that the defendant has not been prejudiced by the plaintiff's lapse in pleading").

[3] The defendant objected to the plaintiff's reliance on the transcript of the calls because it was not properly authenticated. The trial court agreed and held that the transcript was "not admissible for the purposes of this motion." The plaintiff does not challenge this ruling on appeal.

[4] "The privilege of 'fair comment' . . . was one of the most important privileges realized at common law, [and it] was a *qualified privilege* to express an opinion or otherwise comment on matters of public interest. . . . The privilege [however] was elevated to constitutional status . . . by . . . [the] United States Supreme Court . . . ." (Citations omitted; emphasis added.) *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 114–15, 448 A.2d 1317 (1982). "[E]xpressions of pure opinion (those based upon known or disclosed facts) [now] are guaranteed virtually complete constitutional protection." (Internal quotation marks omitted.) Id., 118.

[5] " 'Defamation is comprised of the torts of libel and slander: slander is oral defamation and libel is written defamation.' *Skakel* v. *Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014)." *Gleason* v. *Smolinski*, 319 Conn. 394, 430 n.30, 125 A.3d 920 (2015).

[6] We also question the plaintiff's reliance on the defendant's testimony during the plaintiff's criminal trial. Such testimony is absolutely privileged and cannot form the basis of a slander claim. See *Petyan* v. *Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986) ("There is a long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." [Citation omitted; internal quotation marks omitted.]).